IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket Nos. 37985 & 37994

| | | |
|---|---|---|
| LINWOOD LAUGHY, KAREN HENDRICKSON, and PETER GRUBB, | ) ) ) | |
| Plaintiffs-Respondents, | ) ) | Boise, October 2010 Term |
| v. | ) ) | 2010 Opinion No. 110 |
| IDAHO DEPARTMENT OF TRANSPORTATION, | ) ) ) | Filed: November 1, 2010 |
| Defendant-Appellant, | ) ) | Stephen W. Kenyon, Clerk |
| and | ) ) | |
| CONOCOPHILLIPS COMPANY, | ) ) ) | |
| Intervenor-Appellant. | ) ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Idaho County. Hon. John Bradbury, District Judge.

The decision of the district court is <u>vacated</u> and this case is <u>remanded</u> to the district court for entry of a dismissal.

Hon. Lawrence G. Wasden, Attorney General, Boise, for appellant. Lawrence Allen argued.

Holland & Hart, LLP, Boise, for intervenor/appellant. Erik Stidham argued.

Advocates for the West, Boise, for respondents. Laurence J. Lucas argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

The Idaho Transportation Department ("ITD") granted permits to ConocoPhillips Company ("ConocoPhillips") to transport oversize loads of refinery equipment down U.S. Highway 12 in northern Idaho. The ITD and ConocoPhillips appeal the district court's decision to reverse these permits.

## II. FACTUAL AND PROCEDURAL BACKGROUND

ConocoPhillips purchased two coke drums to replace worn out components at its refinery

in Billings, Montana, and seeks to move them down Highway 12 from Lewiston, Idaho, to the Montana border. Highway 12, also known as the Northwest Passage Scenic Byway, runs through the Clearwater National Forest and, for much of its length, borders the Clearwater and Lochsa Rivers.

The maximum size and weight of vehicles and their loads allowed on state highways are prescribed by statute. *See* I.C. §§ 49-1001, -1002, -1010 (defining the maximum gross load weight and maximum vehicle and load sizes allowed on the highway). ConocoPhillips's drum shipments will be large enough to take up the entire two-lane highway, requiring a rolling roadblock along with a number of traffic flaggers and escort vehicles. For permission to exceed the weight and size specifications, ConocoPhillips had to apply to the ITD for "overlegal" permits under the ITD's rules regarding special permits. IDAPA 39.03.10.100; *see* I.C. § 49-1004 (allowing ITD to consider applications for special permits).[1] ConocoPhillips and its shipping company, Emmert International, worked with the ITD for over a year to develop a detailed transportation plan to move the drums.

Respondents, who live and operate businesses along the Highway 12 corridor, oppose the shipment. They assert that moving the loads down Highway 12 will degrade the local tourism industry, disturb the peaceful enjoyment of their homes, impede highway users from reaching medical care in an emergency, and could create logistical and environmental problems if a drum topples into the river. Respondents voiced their disapproval by sending numerous comments to the ITD but did not intervene as parties in the application process.

Although the ITD had not yet issued the permits to ConocoPhillips, on August 16, 2010, Respondents filed a Petition for Judicial Review and Request for Immediate Injunctive Relief. The district court granted a temporary restraining order the following day, enjoining the ITD from issuing the overlegal permits. On the morning of August 19, 2010, the district court held a telephonic hearing in which it granted a motion by ConocoPhillips to intervene. It also lifted its restraining order, finding that it did not have jurisdiction over the matter until the ITD issued a final agency order. In response, the ITD granted four overlegal permits to ConocoPhillips the following day. Then, on August 24, after a hearing on the merits, the district court reversed the ITD's decision to issue the permits, reasoning that the agency did not properly consider public

---

[1] The ITD rules use the phrase "overlegal permit" as a generic term referring to a permit that allows the applicant to exceed weight or size restrictions on the highway. IDAPA 39.03.10.000, .001, .100.

safety and did not reasonably determine that the shipment plan was necessary.

The ITD and ConocoPhillips (collectively "Appellants") both appealed the district court's decision. ConocoPhillips then filed a Motion for Expedited Hearing, which this Court granted. Oral arguments before this Court occurred on October 1, 2010.

On appeal, Appellants contend that Respondents did not properly articulate any substantial rights that would be prejudiced if the shipment were allowed to occur. They further argue that there was substantial evidence in the record to justify the permits because the ITD correctly considered the public's safety and convenience and determined that it was reasonably necessary to use Highway 12.[2] Last, ConocoPhillips challenges the district court's jurisdiction on the grounds that Respondents did not exhaust their avenues for administrative appeal before petitioning for judicial review.

### III. ISSUES ON APPEAL

**1.** Whether the district court and this Court have jurisdiction to consider this matter.

**2.** Whether Respondents exhausted their administrative remedies.

**3.** Whether the ITD properly granted the overload permits to ConocoPhillips.

**4.** Whether Respondents or ConocoPhillips are entitled to attorney fees incurred in the district court.

**5.** Whether Respondents or ConocoPhillips are entitled to attorney fees on appeal.

### IV. STANDARD OF REVIEW

"When reviewing a decision of the district court acting in its appellate capacity, the Supreme Court directly reviews the district court's decision." *Reisenauer v. State*, 145 Idaho 948, 949, 188 P.3d 890, 891 (2008). The district court shall affirm the agency's action unless the agency's decision was:

    (a) in violation of constitutional or statutory provisions;
    (b) in excess of the statutory authority of the agency;
    (c) made upon unlawful procedure;
    (d) not supported by substantial evidence on the record as a whole; or

---

[2] The ITD's rules regarding overlegal permits provide:

> 01. Primary Concerns. The primary concern of the Department, in the issuance of overlegal permits, shall be the safety and convenience of the general public and the preservation of the highway system . . . .

> 02. Permit Issuance. The Department shall, in each case, predicate the issuance of a [sic] overlegal permit on a reasonable determination of the necessity and feasibility of the proposed movement.

IDAPA 39.03.09.100 (emphases omitted).

(e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3). In addition to proving one of the enumerated statutory grounds for overturning an agency action, the challenging party must also show prejudice to a substantial right. *Id.* § 67-5279(4); *Lane Ranch P'ship v. City of Sun Valley*, 145 Idaho 87, 89–90, 175 P.3d 776, 778–79 (2007). The interpretation of a statute is an issue subject to free review by this Court. *Neighbors for Responsible Growth v. Kootenai Cnty.*, 147 Idaho 173, 176, 207 P.3d 149, 152 (2009).

## V. ANALYSIS

### A. The District Court Lacked Jurisdiction over the Petition for Judicial Review

The Idaho Constitution allows the Legislature to delimit the district courts' appellate jurisdiction. Idaho Const. art. V, § 20.[3] Actions by state agencies are not subject to judicial review unless expressly authorized by statute. I.R.C.P. 84(a)(1). Without an enabling statute, the district court lacks subject-matter jurisdiction. *See, e.g.*, *In re Williams*, 2010 WL 3463992, at *3–4 (Idaho Sep. 7, 2010) (dismissing a petition for review for lack of jurisdiction because no statute authorized an appeal); *Taylor v. Canyon Cnty. Bd. of Comm'rs*, 147 Idaho 424, 431–32, 210 P.3d 532, 539–40 (2009) (same); *cf. Regan v. Kootenai Cnty.*, 140 Idaho 721, 726, 100 P.3d 615, 620 (2004) (holding that a reviewable final order is necessary for subject-matter jurisdiction). Respondents filed a petition for judicial review in the district court to challenge the ITD's decision to grant the overlegal permits. The Idaho Administrative Procedure Act ("IAPA"), I.C. §§ 67-5201 to -5292, governs judicial review of agency actions. *Gibson v. Ada Cnty. Sheriff's Dep't*, 139 Idaho 5, 7, 72 P.3d 845, 847 (2003) (citing I.C. § 67-5270(1)). Idaho Code § 67-5270, subsections 2 and 3, allow petitions for review in two different scenarios but neither applies here.

None of the parties raised the issue of whether the district court had jurisdiction under § 67-5270 to consider Respondents' petition for judicial review. Nonetheless, the courts are obligated to ensure their own subject-matter jurisdiction and must raise the issue *sua sponte* if necessary. *Highlands Dev. Corp. v. City of Boise*, 145 Idaho 958, 960, 188 P.3d 900, 902 (2008).

#### 1. *I.C. § 67-5270(2) Does Not Provide Jurisdiction Because Respondents Are Challenging an Order in a Contested Case*

---

[3] The Idaho Constitution states: "The district court shall have original jurisdiction in all cases, both at law and in equity, *and such appellate jurisdiction as may be conferred by law*." Idaho Const. art. V, § 20 (emphasis added).

4

Idaho Code § 67-5270(2) provides that "[a] person aggrieved by final agency action *other than an order in a contested case* is entitled to judicial review under this chapter," provided the petitioner exhausts the available administrative remedies and complies with other procedural requirements.[4] I.C. § 67-5270(2) (emphasis added). A contested case is then simply defined as "[a] proceeding by an agency . . . that may result in the issuance of an order." I.C. § 67-5240. Thus, for jurisdiction to exist under subsection 2, Respondents must be challenging a final agency action that is *not* an order in a contested case as that term is defined by statute. An order is "an agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one (1) or more specific persons." I.C. § 67-5201(12); *see also* IDAPA 04.11.01.005.12 (stating that an order is an "agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one (1) or more specific persons").

### a. The issuance of the permit was an order

Determining whether the definition of an order applies requires a two-step analysis. *Westway Constr., Inc. v. Idaho Transp. Dep't*, 139 Idaho 107, 112, 73 P.3d 721, 726 (2003). First, to have an order, the Legislature must have empowered the agency to determine the particular issue. *Id.* The Legislature has enabled the ITD to issue, in its discretion, permits for vehicles traveling on the highway exceeding the legal weight or size. I.C. § 49-1004(1). This includes the power to "limit the time of use and operation . . . and may contain any special conditions and require any undertaking or other security" that the ITD deems necessary. *Id.* § 49-1004(1)(a). Pursuant to this grant of authority, the ITD has adopted a variety of rules and standards to govern the permit process, including specifically that applicants provide a written plan for moving overlegal loads down the highway. IDAPA 39.03.09 to .23. Thus, the Legislature has enabled the ITD to make a determination in this case.

Second, the decision must determine "the legal rights, duties, privileges, immunities, or other legal interests" of one or more persons. *Westway Constr.*, 139 Idaho at 112, 73 P.3d at 726. This Court has already found that ITD encroachment permits are orders because they determine "the legal rights and interests" of the applicant seeking to access their property from a state highway. *Lochsa Falls, L.L.C. v. State*, 147 Idaho 232, 239, 207 P.3d 970, 977 (2009).

---

[4] A "person" is "any individual, partnership, corporation, association, governmental subdivision or agency, or public or private organization or entity of any character." I.C. § 67-5201(15). Respondents are individuals, so they are

Similarly, the overlegal permits here would grant to ConocoPhillips the right to transport its overlegal coke drums down a state highway, in addition to imposing numerous public-safety requirements. *See* IDAPA 39.03.09.200 (specifying the extent of the ITD's authority to issue permits). Because the permits are an "order" as defined by the IAPA, they were orders issued in a contested case.

Subsection 2 does not permit review of the ITD's order because it is instead meant to enable challenges either to an agency rule or an agency's compliance with a legal duty. Overall, the IAPA contemplates three distinct types of agency actions that could be reviewed by a court: (1) rules, (2) orders, and (3) the performance of a duty placed on the agency by law. I.C. § 67-5201(3).[5] Subsection 2, however, rules out reviewability for orders in contested cases, so it must therefore only permit judicial review of rules or the agency's performance of a legal duty.

The distinction between an order and a rule "turns primarily on applicability: orders—like judicial decrees—affect identified parties; rules—like statutes—affect classes of persons." Michael S. Gilmore & Dale D. Goble, *The Idaho Administrative Procedure Act: A Primer for the Practitioner*, 30 Idaho L. Rev. 273, 284 (1993) (emphasis omitted). Unlike a generally applicable rule, the permits particularly affect only ConocoPhillips's right to move a load down a state highway. The permits are therefore an order, not a rule, and are not reviewable under subsection 2 because they were orders in a contested case. Similarly, there are other duties that are imposed on the ITD by statute or judicial mandate, such as, for example, the obligation to adopt a uniform system of traffic-control devices. *Id.* at 289; I.C. § 49-201(3). A failure or deficiency in performing this duty would also be an agency action reviewable under subsection 2. Again, however, the permits at issue in this case affect ConocoPhillips's particular rights, privileges, and duties. They are therefore an order, not the product of an improperly performed duty. Respondents contend that by issuing the permits, the ITD incorrectly fulfilled its "duty" to ensure the public's safety and convenience. This in reality is just a substantive challenge to ITD's order that questions whether the ITD correctly applied the standards governing special permits. Consequently, no jurisdiction is available under I.C. § 5270(2).

b.     *This is a contested case even though the ITD used informal procedures*

The Dissent asserts that this is not a contested case because the ITD utilized informal

---

"persons" who could, in some cases, be eligible for review under I.C. § 67-5270(2).

procedures in processing the case.

A person aggrieved by an agency action other than an order in a contested case is entitled to petition for judicial review. I.C. § 67-5270(2). This was a contested case even though the ITD only followed informal procedures because the IAPA both authorizes and expressly encourages state agencies to resolve issues informally. Formal procedures, such as notice, a hearing, or a formal record are not part of the definition of an order in a contested case.

The IAPA provides that an "informal disposition may be made of any contested case by negotiation, stipulation, agreed settlement, or consent order." I.C. § 67-5241(1)(c). It goes on to specifically state that "[i]nformal settlement of matters is to be encouraged." *Id.* The statute represents a conscious legislative effort to "encourage informal dispute resolution" related to all kinds of agency action. Gilmore & Goble, *supra*, 30 Idaho L. Rev. at 280; *see also* Act of April 8, 1992, ch. 263, § 25, 1992 Idaho Sess. Laws 783, 802 (adding I.C. § 67-5241).

However, an agency cannot unilaterally decide to utilize informal procedures to the exclusion of formal proceedings. "Unless all parties agree to the contrary in writing, informal proceedings do not substitute for formal proceedings and do not exhaust administrative remedies, and informal proceeding [sic] are conducted without prejudice to the right of the parties to present the matter formally to the agency." IDAPA 04.11.01.103.

Although the ITD has adopted substantive standards for issuing special permits, the Attorney General promulgates rules of procedure for agencies to use when executing their general functions, including adjudicating contested cases. *Id.* § 67-5206(2), (4). These rules apply unless an agency has devised its own procedural scheme, which the ITD has not. *Id.* § 67-5206(5). The ITD rules also specifically state that appeals in special-permit applications are governed by the Attorney General's rules. IDAPA 39.03.11.003. The Idaho Rules of Administrative Procedure of the Attorney General ("the Rules") can be found at IDAPA 04.11.01.000 to .999.

The Rules allow informal proceedings to be followed in contested cases before an agency. IDAPA 04.11.01.100. "Unless prohibited by statute, the agency may provide for the use of informal procedure at any stage of a contested case." IDAPA 04.11.01.101. There is ample authority supporting an agency's decision to handle a dispute informally.

---

[5] I.C. § 67-5201(3) defines an "agency action" as: "(a) The whole or part of a rule or order; (b) The failure to issue a rule or order; or (c) An agency's performance of, or failure to perform, any duty placed on it by law."

The Dissent asserts that only formally adjudicated cases are contested cases under the IAPA. To the contrary, no statute or rule makes formal proceedings a prerequisite to a contested case. A contested case is defined both by statute and by the Rules as a "proceeding by an agency . . . that may result in the issuance of an order." *Id.* § 67-5240; *see also* IDAPA 04.11.01.005.06 (stating that a contested case is a "proceeding which results in the issuance of an order"). Moreover, Rule 50 states that the rules governing both informal and formal proceedings apply to agencies in contested cases. IDAPA 04.11.01.050.

Following the plain text of the statute, this Court has twice stated that there are only two elements to a contested case: (1) the agency must be empowered to determine the particular issue, and (2) the action must fit the statutory definition of an "order." *Lochsa Falls,* 147 Idaho at 237, 207 P.3d at 968; *Westway Constr.,* 139 Idaho at 111–13, 73 P.3d at 725–27. This Court has never otherwise suggested that only formally adjudicated cases are contested cases. *See Barron v. Idaho Dep't of Water Res.*, 135 Idaho 414, 417, 18 P.3d 219, 222 (2001) (stating that "*all proceedings* by an agency . . . that may result in the issuance of an 'order'" are governed by the IAPA (emphasis added)); *Dupont v. Idaho State Bd. of Land Comm'rs*, 134 Idaho 618, 622, 7 P.3d 1095, 1099 (2000) ("I.C. § 67-5240 defines *any proceeding* that may result in an order as a contested case, unless otherwise provided." (emphasis added)). Whether formal procedures were followed is irrelevant to the definition of a contested case.

The Dissent nonetheless contends that there was no contested case because the ITD stated that it declined to initiate one and indicated that it did not regard ConocoPhillips's application for a permit as a contested case. The Dissent cites I.C. § 67-5241(1)(a), which does provide that "an agency or a presiding officer may decline to initiate a contested case." Again, however, it does not matter whether the agency regards a proceeding to be part of a contested case or not. Proceedings that result in the issuance of an order are contested cases. I.C. § 67-5240.

Idaho Code § 67-5241(1)(a) does not state that an agency may decline to follow the required statutory procedures in a contested case. It states that an agency may decline to *initiate* a contested case. It recognizes that some agencies have a prosecutorial function and, when exercising that function, have discretion to decline to prosecute. Agencies can have both prosecutorial and adjudicatory functions. As IDAPA 04.11.01.420 states, "[w]hen statute assigns to an agency both (1) the authority to initiate complaints or to investigate complaints made by the public, and (2) the authority to decide the merits of complaints, the agency is

8

required to perform two distinct functions: prosecutorial/investigative and adjudicatory." The prosecutorial function includes deciding whether or not to issue a complaint. As IDAPA 04.11.01.420.01 states, "[t]he prosecutorial function includes presentation of allegations or evidence to the agency head for determination whether a complaint will be issued . . . ." A "complaint" charges a person with a violation of the law. "All pleadings charging other person(s) with acts or omissions under law administered by the agency are called 'complaints.'" IDAPA 04.11.01.240.01. The filing of a complaint initiates a contested case. *See* IDAPA 04.11.01.210 ("Pleadings in contested cases are called applications or claims or appeals, petitions, complaints, protests, motions, answers, and consent agreements."). Idaho Code § 67-5241(1)(a) simply provides that an agency has discretion to decline to prosecute—to decline to initiate a contested case.

For example, under the Idaho Bar Commission Rules ("I.B.C.R."), Bar Counsel investigates all grievances that allege violations of the Rules of Professional Conduct. I.B.C.R. 504(b), 509(a). Bar Counsel has a number of options when handling a grievance, including the power to seek formal charges. I.B.C.R. 509(c). Yet, after an informal investigation, Bar Counsel often chooses to simply disregard the matter, to issue an informal admonition, or to privately reprimand the charged attorney. I.B.C.R. 509(b), (c). While all of these actions would constitute the agency's disposition in a dispute, none involves an order that determines the attorney's legal rights, duties, or privileges. These actions would reflect the presiding officer's decision to "decline to initiate a contested case" under I.C. § 67-5241(1)(a).

The Dissent also argues that, since apparently no application was filed with the ITD until the day it issued the permits, no contested case was ever initiated. It cites Rule 200 for the proposition that "an application is the initial pleading that commences a contested case." This position ignores the plain text of Rule 200, which simply provides that representatives for service must be named in "[t]he initial pleading of each party *at the formal stage of a contested case*." IDAPA 04.11.01.200 (emphasis added). The rule on its face does not require any pleading to commence a contested case, but merely governs how pleadings are filed in the formal stage of a contested case. ConocoPhillips did not have to file an application to initiate a contested case.

Therefore, because the issuance of the permit was an order in a contested case, this Court does not have jurisdiction under I.C. § 67-5270(2).

2.      *I.C. § 67-5270(3) Does Not Provide Jurisdiction Because Respondents Were Not*

*Parties and No Final Order Was Issued*

  *a. Respondents were not parties before the agency*

  Subsection 3 states that "[a] *party* aggrieved by a final order in a contested case decided by an agency . . . is entitled to judicial review under this chapter," again if some additional procedural requirements are met. I.C. § 67-5270(3) (emphasis added). "'Party' means each person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party." *Id.* § 67-5201(13).

  Rule 150 states that "[p]arties to contested cases before the agency are called applicants or claimants or appellants, petitioners, complainants, respondents, protestants, or intervenors." IDAPA 04.11.01.150. People who "seek any right, license, award or authority from the agency are called 'applicants' or 'claimants' or 'appellants.'" IDAPA 04.11.01.151. To oppose an applicant, anyone can petition to become an "intervenor" under Rule 156, a blanket term that applies to a person who does not fall into a specific category and who is nonetheless permitted to participate as a party.[6] IDAPA 04.11.01.156. Persons petitioning for intervenor status are admitted as parties if they can demonstrate a "substantial interest in the proceeding." IDAPA 04.11.01.350, .353.

  Respondents were not admitted as parties at any time; neither did they seek admission. Respondents sent a number of written comments and objections to the ITD to oppose ConocoPhillips's application for an overlegal permit, but never filed as intervenors or any other kind of party. Despite the fact that ConocoPhillips and the ITD had undergone months of discussion over this matter, Respondents simply filed a petition for judicial review just as the ITD was preparing to issue the overlegal permits. They therefore were not parties entitled to judicial review under I.C. § 67-5270(3).[7]

  Allowing only a party, and not simply any interested person, to petition for judicial review of an order is a natural corollary to the exhaustion doctrine, which requires all petitioners to exhaust their administrative remedies before appealing to the district court. *See* I.C. § 67-5271 (imposing exhaustion requirement). The exhaustion doctrine flows from a number of important

---

[6] Rule 156 provides: "Persons, not applicants or claimants or appellants, complainants, respondents, or protestants to a proceeding, who are permitted to participate as parties pursuant to Rules 350 through 354 are called 'intervenors.'" IDAPA 04.11.01.156.

[7] It is immaterial whether Respondents were "entitled" to be admitted as intervenors because there is no indication in the record that they sought such admission.

policy considerations, "such as providing the opportunity for mitigating or curing errors without judicial intervention, deferring to the administrative processes established by the Legislature and the administrative body, and the sense of comity for the quasi-judicial functions of the administrative body." *White v. Bannock Cnty. Comm'rs*, 139 Idaho 396, 401–02, 80 P.3d 332, 337–38 (2003). Being admitted as parties would have enabled Respondents to actively participate in the application process at the agency level. *Shokal v. Dunn*, 109 Idaho 330, 334, 707 P.2d 441, 445 (1985). If Respondents had formally intervened, the agency could have brought its expertise to bear in considering the parties' competing interests, heard Respondents' evidence and testimony, and corrected substantive mistakes. Instead, Respondents sought to circumvent the administrative process by going directly to the district court to block ConocoPhillips's overlegal permits from issuing.

Counsel for Respondents suggested at oral argument that, since the ITD and ConocoPhillips were undergoing an informal application process, the Respondents could become parties by informally opposing the permits. Neither the IAPA nor the Rules, however, recognize or create a classification of "informal parties." Although the IAPA expressly encourages parties and agencies to reach informal dispositions, I.C. § 67-5241(1), a person asserting party status must still be admitted or rightfully be seeking admission as a party, *id.* § 67-5201(13). The law distinguishes between informal and formal proceedings merely to specify what procedures the agency must undergo in adjudicating a contested case, such as appointing hearing examiners and building a formal record. *See* IDAPA 01.11.01.100 (stating that "[i]nformal proceedings are proceedings in contested cases . . . to be conducted using informal procedures" such as a proceeding without a formal record, designation of parties, hearing examiners, or other formal procedures). Persons seeking admission must still file a protest, a petition to intervene, or another similar pleading to be admitted as a party. IDAPA 04.11.01.250, .350, .353. Because Respondents never sought to be admitted as parties, it is irrelevant whether the proceedings were in a formal or informal phase.

The Dissent suggests that Respondents "may be entitled to party status" as petitioners, complainants, or protestants even without filing any pleadings. Even if someone could become a party without filing any pleadings, and even if Respondents had filed a pleading to initiate formal proceedings, they would not have been eligible for party status under any of these categories. First, "petitioners" are persons "who seek to modify, amend or stay existing orders or rules of the

11

agency . . . or to otherwise take action that will result in the issuance of an order." IDAPA 04.11.01.152. If Respondents had participated in the agency proceedings, they would have been opposing an application or, in other words, opposing the issuance of an order. They would not have been seeking to modify or stay an existing order. Second, "complainants" are persons "who charge other person(s) with any act or omission." IDAPA 04.11.01.153. Respondents would not be charging ConocoPhillips with violating any rule or regulation, but would be opposing their application for a permit. Last, "protestants" are persons "who oppose an application or claim or appeal *and who have a statutory right* to contest the right, license, award or authority sought by an applicant." IDAPA 04.11.01.155 (emphasis added). While Respondents certainly oppose an application, they have no specific statutory right to do so, and have never asserted as such. As explained above, Respondents might have sought to be admitted as intervenors if they could demonstrate a "substantial interest in the proceeding," but they took no steps to do so. IDAPA 04.11.01.350, .353. Respondents are not entitled to party status unless granted leave to intervene, and were therefore never wrongly denied the opportunity to take part in formal agency proceedings.

### b. *There is not yet a final order*

A party aggrieved by a final order in a contested case can seek judicial review. I.C. § 67-5270(3). Not only must the person seeking judicial review be a party, but there must be a final order. It does not appear in this case that there is yet a final order that is subject to judicial review.

The only document in the appellate record that could be a final order is the "Memorandum of Decision" issued on August 20, 2010, by Alan Frew, Administrator of the Division of Motor Vehicles, Idaho Transportation Department. For that to be a final order, it must fit within one of three definitions, and it does not.

### 1. *A final order where the presiding officer was the agency head*

"If the presiding officer is the agency head, the presiding officer shall issue a final order." I.C. § 67-5246(1). "'Agency head' means an individual or body of individuals in whom the ultimate legal authority of the agency is vested by any provision of law." I.C. § 67-5201(4). The Idaho Transportation Board is the agency head of the Idaho Transportation Department. I.C. §§ 40-301 & 40-501. Because Mr. Frew is not the Board, his memorandum cannot constitute a final order issued by the agency head.

12

> 2. *A final order issued by the agency head upon review of a recommended order*

"If the presiding officer issued a recommended order, the agency head shall issue a final order following review of that recommended order." I.C. § 67-5246(2). Mr. Frew's memorandum does not constitute a recommended order because "[a] recommended order shall include a statement of the schedule for review of that order by the agency head or his designee." I.C. § 67-5244. There is no such statement in the memorandum. In addition, a recommended order is not a final order. The agency head must still issue a final order after reviewing the recommended order, and the record does not reveal any such final order issued in this case.

> 3. *A preliminary order that becomes a final order.*

"If the presiding officer issued a preliminary order, that order becomes a final order unless it is reviewed as required in section 67-5245, Idaho Code." I.C. § 67-5246(3). Mr. Frew's memorandum was not a preliminary order because it did not include "(a) A statement that the order will become a final order without further notice; and (b) The actions necessary to obtain administrative review of the preliminary order," both of which are required for a preliminary order. I.C. § 67-5245(1).

In summary, the record does not indicate that the IDT ever issued a final order in this case. Absent a final order, any petition for judicial review is premature.

Because the Respondents are not parties, and because there was no final order issued, there is no jurisdiction under I.C. § 67-5270(3).

> 3. *Respondents Are Not Entitled to Have the Case Remanded to the Agency for Formal Proceedings*

The Dissent argues that even if this were a contested case, judicial review is premature and the permits should be remanded to the ITD for formal adjudication procedures. It refers to Rule 102, which states that "any person participating in an informal proceeding must be given an opportunity for a later formal administrative proceeding before the agency, at which time the parties may fully develop the record before the agency." IDAPA 04.11.01.102. The Dissent maintains that Respondents were automatically entitled to formal proceedings because they submitted comments to the ITD during the application process.

Because the district court, and thus this Court, lacks jurisdiction, the only remedy this Court may order is a dismissal. "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." I.R.C.P.

13

12(g)(4). Therefore, this Court must dismiss the case and does not have the power to remand to the agency for further proceedings.

Further, regardless of whether Respondents were entitled to an "opportunity" to participate in formal proceedings here, they never took the basic procedural steps necessary to request them. "Formal proceedings . . . must be initiated by a document (generally a notice, order or complaint if initiated by the agency) or another pleading listed in Rules 210 through 280 if initiated by another person." IDAPA 04.11.01.104. Rules 210 through 280 list a number of pleadings a person may file, including "applications or claims or appeals, petitions, complaints, protests, motions, answers, and consent agreements." *See* IDAPA 04.11.01.210. Respondents filed no such documents. They therefore are not entitled to any formal hearing before the ITD. Respondents would only be entitled to participate in formal proceedings if they became parties before a final order was entered.

It is no mystery why persons must initiate formal proceedings by filing a pleading. This rule prevents anyone from doing what Respondents did here: sit out the agency proceedings, show up in court just as a decision is made, and force the agency to litigate the matter. As the Dissent itself emphasizes, the ITD handles roughly 28,000 overlegal permits per year. It would place a crushing burden on state agencies if anyone supposedly aggrieved by an agency action could become a "participant" by commenting on a permit application, then drag the agency into court and force it to hold formal hearings after making its decision. This would eviscerate the administrative process and allow anyone to unfairly prevent an applicant from receiving a license from a state agency.

To summarize our holding today, it is entirely possible that Respondents have real grievances with the ITD's decision in this case, and the Court is sympathetic to those who seek to participate in the government's participation process. Even so, the Constitution and the Legislature have limited the Court's power to act here. Without the authority to consider the Respondent's arguments, the Court's only choice is to remand with instructions to dismiss without prejudice.

**B.     No Party Is Entitled to Attorney Fees Either in the District Court or on Appeal**

The ITD did not request attorney fees on appeal and did not challenge the district court's refusal to award fees below. ConocoPhillips, however, requests fees under I.C. § 12-117(1) and -121, both in the district court and on appeal. Respondents also request fees under I.C. § 12-

14

117(1) below and on appeal.[8]

Neither ConocoPhillips nor Respondents are eligible for attorney fees under I.C. § 12-117(1). This provision was amended to permit fees "in any administrative proceeding or civil judicial proceeding." Act of March 4, 2010, ch. 29, 2010 Idaho Sess. Laws 49, 49–50.[9] As this Court recently held, however, a petition for judicial review of an agency action is neither an administrative proceeding nor a civil judicial proceeding, so § 12-117(1) does not enable the courts to award attorney fees in cases like this one. *Smith v. Washington Cnty.*, No. 35851 (Idaho Oct. 6, 2010). Neither party can collect fees under § 12-117(1).

ConocoPhillips is also not entitled to fees under I.C. § 12-121. This provision grants discretion to the Court to award fees "[i]n any civil action."[10] A petition for judicial review is not a civil action, *Neighbors for Responsible Growth v. Kootenai Cnty.*, 147 Idaho at 176 n.1, 207 P.3d at 152 n.1, so fees are not available under § 12-121. Accordingly, ConocoPhillips's request for attorney fees under I.C. § 12-121 is denied.

## VI. CONCLUSION

The district court lacked jurisdiction, as does this Court, to consider Respondents' petition for judicial review. The order reversing the ITD's decision to grant overlegal permits to ConocoPhillips is vacated and the case remanded for entry of an order of dismissal without prejudice for lack of jurisdiction. No attorney fees are awarded.

Chief Justice EISMANN and Justice HORTON **CONCUR.**

---

[8] In their Response Brief on appeal, Respondents requested attorney fees from the ITD under "I.C. § 12-117(a)" because the ITD is a state agency. Respondents were plainly referring to I.C. § 12-117(1), which provides for attorney fees in some actions involving state agencies as parties.

[9] I.C. § 12-117(1) provides:

> Unless otherwise provided by statute, in any administrative proceeding or civil judicial proceeding involving as adverse parties a state agency or political subdivision and a person, the state agency or political subdivision or the court, as the case may be, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

[10] I.C. § 12-121 provides:

> In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees. The term "party" or "parties" is defined to include any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

J. JONES, Justice, dissenting or, alternatively, concurring in the result.

I dissent because this does not appear to be a contested case under the Idaho Administrative Procedure Act (APA) and the Respondents have the right to seek judicial review of ITD's decision. However, if this is properly considered to be a contested case, I concur that it should be dismissed for the reason that judicial review is premature. No final order has been issued by ITD and Respondents are entitled to the opportunity to request further proceedings.

## THIS IS NOT A CONTESTED CASE

It is common knowledge that if something does not walk like a duck or talk like a duck, it is probably not a duck. Similarly, if a request for a state permit is not required to be processed as a contested case, if the request is not treated like a contested case by the processing agency, and if the agency does not comply with any of the requirements for handling a contested case, it probably is not a contested case. That is the situation here.

While it is true that requests or applications for state licenses and permits are proceedings that may result in the issuance of an order, as defined in Idaho Code section 67-5201(12), arguably making the proceedings contested cases under Idaho Code section 67-5240, that is not the end of the inquiry. In order to be a contested case, it must be processed in accordance with the statutory requirements in Idaho Code sections 67-5242 through 5253. None of those requirements were complied with in this case. There was no notice of hearing, hearing, presiding officer, or recording of proceedings as required under section 5242. There was no recommended order, preliminary order, or final order as required by sections 5243 through 5246. There was no contested case record upon which to base findings of fact as provided in section 5248. The "evidence" was not as contemplated in section 5251, making it unlikely that the record complied with section 5249. And, while section 5253 contemplates no ex-parte communications, the record here was based almost solely on ex-parte communications between ConocoPhillips/ Emmert and ITD.

Further, as required under Idaho Code section 67-5206(2), the Idaho Attorney General has promulgated rules of administrative procedure that apply to administrative proceedings (AG Rules). IDAPA 04.11.01. According to Rule 1 of the AG Rules, "Every state agency that conducts rulemaking or hears contested cases must adopt individual rules of procedure as required by this chapter. Further every state agency will be considered to have adopted the

16

procedural rules of this chapter unless the state agency by rule affirmatively declines to adopt this chapter, in whole or in part." IDAPA 04.11.01.001.02. ITD has not affirmatively declined to adopt the AG Rules, except in certain narrow respects not relevant here, and therefore the AG Rules apply here. ITD did not follow the contested case rules set out in Subchapter B (Rules 100 through 800) of the AG Rules.[11]

Idaho Code section 67-5240 appears to make every application for a state license, permit, registration, or charter, a contested case subject to the contested case rules. However, the APA requires much more of a proceeding in order to properly categorize it as a contested case. The Legislature obviously recognized that it would be impractical and unnecessary to make each and every one of these proceedings a contested case. Indeed, it would impose a crushing burden on every state agency to have to appoint a hearing officer every time someone walked through the door wanting some sort of permit, or to be licensed as a lawyer, chiropractor, certified public accountant, or the like.[12] Thus, the Legislature wisely provided that, "Unless prohibited by other provisions of law . . . an agency or a presiding officer may decline to initiate a contested case…" Idaho Code section 67-5241(1)(a). If an agency declines to initiate a contested case, the agency is to furnish a brief statement for the reasons therefor. Idaho Code section 67-5241(3). It is unknown whether that occurred in this case. What is known is that ITD did not consider this to be a contested case and did not process it as one. In its opening brief, ITD stated:

> The issuance of permits is authorized in Idaho Code title 49. There is not any provision in title 49 which requires the Department to base its actions exclusively on a record. In fact, the permit process generally is not resolved in a contested case or an adjudicative manner. Accordingly, this is a not a case in which the Department was required to make its decision exclusively upon the administrative record.

Counsel for the Department conceded at oral argument that this case was not handled as a

---

[11] It is not even clear if, or when, a contested case might have been initiated in this matter. According to Rule 200 of the AG Rules, an application can initiate a contested case. IDAPA 04.11.01.200. Among the documents in the file before the Court are four documents entitled "Idaho Permit and Application for Over-Legal Permit and/or Load Movement," all dated August 20, 2010. If these were ConocoPhillips/Emmert's first applications for the four permits at issue here, it is unlikely a contested case was initiated prior to August 20, 2010. The copies of documents in the Court file do not appear to have been signed by or behalf of ConocoPhillips/Emmert, making it difficult to determine whether the applications ever became effective.

[12] In an affidavit submitted in support of ITD's motion for expedited hearing, Mr. Frew pointed out that ITD issued over 28,000 overlegal permits in fiscal year 2010 for overweight and oversized vehicles. Conducting a contested case for each of these applications would be a daunting and costly undertaking.

contested case.[13]

ITD apparently has a policy of declining to initiate contested cases in the context of permit applications. Rather, it appears that ITD generally treats these matters in an informal manner, comparable in some respects to the informal procedure described in AG Rule 100,[14] "i.e., procedures without a record to be preserved for later agency or judicial review, without the necessity of representation according to Rule 202, without formal designation of parties, without the necessity of hearing examiners or other presiding officers, or without other formal procedures required by these rules for formal proceedings." IDAPA 04.11.01.100.

Since the Department did not consider this to be a contested case and did not process it as a contested case but, rather, processed it informally, it is simply not a contested case. The Legislature gives an agency the option to decline to initiate a contested case and that is what occurred here. Therefore, the Respondents are entitled to review under Idaho Code section 67-5270(2) which provides, "A person aggrieved by final agency action other than an order in a contested case is entitled to judicial review under this chapter if the person complies with the requirements of sections 67-5271 through 67-5279, Idaho Code." While the permit and

---

[13] It would be unfair to deem this concession as a binding admission that the matter was not a contested case, just as it would unfair and incorrect to deem the Respondents' attorney's concession that the Respondents were not parties in this matter to be a binding admission. Neither issue was raised or decided below, nor addressed in the briefing before the Court. We should base our decisions upon the actual facts and not upon what individual participants perceive them to be, particularly where the parties have not had an opportunity to brief and argue the issues. With regard to the contested case issue, while the concession by ITD does not constitute a legal admission, it certainly does have a bearing on the factual matter as to how ITD processes overlegal permit requests, including this one. It was by no means handled in the manner of a formal contested case. The question is whether ITD declined to process it as a contested case of any nature under the statutory authority of I.C. § 67-5241(1)(a) or whether ITD was processing it initially under the informal procedure provided for in the AG Rules. With regard to the issue of whether Respondents are parties, the concession by their attorney that they had not been admitted as parties was, at best, uninformed. It was fairly obvious when this case was presented on oral argument that Respondents' attorney was not familiar with the various definitions of party participants in the AG Rules. The discussion revolved around the definition of a "party" in the context of the Idaho Rules of Civil Procedure, which definition does not apply in the context of an administrative proceeding. As one might expect, the AG Rules set out more relaxed definitions for an administrative proceeding that contemplate a broader range of parties than in a court proceeding. Again, this matter was not briefed or considered below and not briefed or argued before this Court. This Court has little basis to determine whether or not Respondents (or, for that matter, ConocoPhillips/Emmert) obtained party status in the administrative proceeding. As that determination is not necessary to the decision of this case, since the procedure in the administrative proceeding was informal under any definition, since the administrative proceeding produced no final order, and since Respondents will have the opportunity upon remand to seek party status (if they are not already parties) and to request a formal administrative proceeding under Rule 102 of the AG Rules, it is a matter of no import here.

[14] The AG Rules apply only to contested cases, the attorney general not having been authorized to promulgate agency rules for proceedings exempted under I.C. § 67-5241(1)(a). Thus, the AG Rules make no provision for procedures to be employed by the agency where it declines to initiate a contested case. The informal manner in which this case was processed need not necessarily comply with the informal procedure provisions of the AG Rules (Rules 100-103), as those rules are promulgated specifically to apply to contested cases.

application documents, or the Memorandum of Decision, may be orders, they are not orders in a contested case because this was not a contested case. One need not be a "party" in order to obtain judicial review of a final agency action where the action is something "other than an order in a contested case" under the APA. An aggrieved person may seek judicial review of final agency action resulting outside the context of a contested case. As persons who live along the route and who will be affected by the transportation of the ConocoPhillips units, Respondents certainly appear to be aggrieved persons. As such, they have a right to be heard.

## IF THIS IS A CONTESTED CASE, JUDICIAL REVIEW IS PREMATURE

If ITD's declination to initiate a contested case in this matter was invalid for failure to "furnish a brief statement of the reasons for [its] decision" not to initiate a contested case or, if for some other reason not apparent in the record before the Court, this is properly considered to be a contested case, judicial review is premature because contested case proceedings have not run their course. If this is a contested case, I concur in the dismissal so that administrative proceeding can be completed, including the issuance of a proper final order.

The procedural analysis is complicated by the uncertainty as to when, or even if, ConocoPhillips/Emmert actually submitted an application for the overlegal permits. None of the parties have pointed to an application by ConocoPhillips, or its agent Emmert, prior to the four permit and application documents dated August 20, 2010. The copies of those documents in the file are not signed. Under the AG Rules, an application is the initial pleading that commences a contested case. IDAPA 04.11.01.200. If no application was submitted prior to August 20, 2010, it may be that a contested case was never properly initiated.

It appears axiomatic that there can be no parties to a contested case until a contested case is initiated. If ConocoPhillips/Emmert did not file an application until August 20, 2010, it could hardly have been a party before that time.[15] Based upon the state of the record, it is difficult to say when a contested case was initiated, if indeed one was.

However, assuming that a contested case was initiated some time during the discussions

---

[15] It is unclear when, or if, ConocoPhillips/Emmert became a "party" in the administrative proceeding. Whether a contested case is handled under informal or formal proceedings, it must be initiated by a pleading within the meaning of AG Rule 200. IDAPA 04.11.01.200. The record does not disclose any document that could be considered to be an initial pleading, with the possible exception of the four permit and application documents, dated August 20, 2010. ConocoPhillips/Emmert may have regarded this as a potential defect, as it did move to intervene in the administrative appeal before the district court on August 19, 2010, and was granted intervenor status by the district court judge. That occurred the day before the applications/permits were issued by ITD.

between ConocoPhillips/Emmert and ITD, it was obviously conducted under informal procedure. IDAPA 04.11.01.101. Rule 102 of the AG Rules states:

> If statute provides that informal procedures shall be followed with no opportunity for further formal administrative review, then no opportunity for later formal administrative proceedings must be offered following informal proceedings. Otherwise, except as provided in Rule 103,[16] <u>any person participating in an informal proceeding must be given an opportunity for a later formal administrative proceeding before the agency</u>, at which time the parties may fully develop the record before the agency.

IDAPA 04.11.01.102. (emphasis added). None of the briefing before the Court discloses a statute that provides for the use of informal procedure with regard to the permits at issue here or that prohibits an opportunity for further formal administrative review. Therefore, persons participating in the informal proceedings at issue here, specifically including Respondents, must be given an opportunity for a later formal administrative proceeding in order to fully develop the record before ITD. While it is not entirely clear from the AG Rules, it appears that persons, other than applicants, who participate in informal proceedings may be entitled to party status when formal proceedings follow the informal proceedings. Such persons may qualify as petitioners (IDAPA 04.11.01.152), complainants (IDAPA 04.11.01.153) or protestants (IDAPA 04.11.01.155). If Respondents do fall within one of these categories, and it appears they might, they become parties upon the commencement of formal proceedings and need not file a petition for intervention to become a party during the course of the formal proceedings.

Furthermore, ITD has failed to issue a final order. The permits and Memorandum of Decision, all dated August 20, 2010, do not constitute final orders under the provisions of IDAPA. In *Westway v. Idaho Transportation Dept.*, 139 Idaho 107, 73 P.3d 721 (2003), this Court considered and decided what constitutes a final order issued by ITD:

> The next question is whether a final order was issued by the ITD. It does not argue that it has issued an order that would be final under the APA. The two documents in the record that could arguably constitute a final order are the August 14, 2000 letter written by ITD's counsel and the September 14, 2000 letter entitled "Final Report" written by a roadway design engineer. Because neither of those persons  was the "agency head" (the Idaho Transportation Board), they

---

[16] Rule 103 of the AG Rules states that "informal proceedings do not substitute for formal proceedings and do not exhaust administrative remedies," unless all parties agree to the contrary in writing. IDAPA 04.11.01.103. There is no such written agreement in this case. It seems fairly obvious that administrative remedies have not been exhausted here.

could only issue either a recommended order or a preliminary order. IDAHO CODE § 67-5243(1) (2001). A recommended order becomes final only after review by the agency head in accordance with Idaho Code § 67-5244. *Id.* There is no contention that the Idaho Transportation Board reviewed either of these letters. Therefore, neither letter was a recommended order that became final upon review by the agency head. A preliminary order can become final without review by the agency head, *Id.,* but it must include "a statement that the order will become a final order without further notice" and "the actions necessary to obtain administrative review of the preliminary order." IDAHO CODE § 67-5245(1) (2001). Neither of the letters contained those required statements. Therefore, they were not preliminary orders. Thus, no final order has been issued, nor does the record indicate that the ITD even complied with the hearing requirements in the APA.

*Id.* at 114, 73 P.3d at 728. The same situation pertains here. There is no indication anywhere in the "record" that the agency head reviewed or approved the permits or the Memorandum of Decision. Mr. Frew, who issued the Memorandum of Decision, is not the agency head. Neither the Memorandum of Decision nor the permits contain the finality statements required by the APA or by the AG Rules. *See* IDAPA 04.11.01.740. Furthermore, it should also be observed that the four permit and application documents are only conditional "orders." Each permit states, "Permit not valid until Montana permit has been issued." There is no evidence in the record that Montana has issued permits for the four loads.[17] Thus, there is no final order in this proceeding and, as mentioned above, ITD has also failed to comply with the hearing requirements. Therefore, assuming this to be a contested case, I would concur that the case needs to be remanded for dismissal without prejudice so that the administrative proceedings can be completed in accordance with the AG Rules.

Justice BURDICK CONCURS.

---

[17] Apparently, the permits will lie dormant until such time as the state of Montana issues permits. This creates an interesting situation, since the Idaho permits make no provision for inclement weather conditions. If the state of Montana were to approve permits for the loads on January 1 of 2011, the Idaho permits would automatically become valid for a period of five days. Thus, ConocoPhillips/Emmert would be faced with a situation where they would either have to make the risky decision to proceed over snow-covered roads or allow the permits to expire upon the fifth day from their issuance. It is unknown why ITD made no provision for inclement weather conditions.