# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51462

CARELON BEHAVIORAL HEALTH, INC., )
fka BEACON HEALTH OPTIONS, INC., )
)
   Plaintiff-Appellant, )
)
v. )
)
STATE OF IDAHO, through the IDAHO )
DEPARTMENT OF ADMINISTRATION )
and the IDAHO DEPARTMENT OF )
HEALTH AND WELFARE; STEVEN )
BAILEY, solely in his official capacity; )
CHELSEA ROBILLARD, solely in her official )
capacity; and MAGELLAN OF IDAHO, )
LLC; MAGELLAN HEALTH, INC., and )
MAGELLAN HEALTHCARE, INC., )
)
   Defendants-Respondents, )
)
and )
)
UNITED BEHAVIORAL HEALTH, INC., )
dba OPTUM IDAHO, )
)
   Intervenor-Defendant- )
   Respondent. )
)

Boise, August 2025 Term

Opinion Filed: December 18, 2025

Melanie Gagnepain, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Nancy A. Baskin, District Judge.

The decision of the district court is affirmed.

Givens Pursley, LLP, Boise; Troutman Pepper Hamilton Sanders, LLP, New York, NY, for Appellant. Preston N. Carter argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondents State of Idaho, Idaho Department of Administration, Idaho Department of Health & Welfare, Steven Bailey and Valerie Bollinger. Alan M. Hurst argued.

Trout Law, PLLC, Boise; Bryan Cave Leighton Paisner, LLP, Denver, Colorado; Bryan Cave Leighton Paisner, LLP, San Francisco, California; Williams &

1

Connolly, LLP, Washington, D.C. 20024 for Respondents Magellan of Idaho, LLC, Magellan Health, Inc. & Magellan Healthcare, Inc. Steven M. Cady argued.

Tolman Brizee & Cannon, P.C., Twin Falls; Dorsey & Whitney, LLP, Minneapolis, Minnesota; Gibson Dunn & Crutcher, LLP, Washington, D.C., for Intervenor United Behavioral Health, Inc. d/b/a Optum Idaho.

———————————

BRODY, Justice

This case concerns the availability of an original civil action against the State under the State Procurement Act, Idaho Code section 67-9201, et seq. In 2021, the Idaho Department of Administration's (the "Administration") Division of Purchasing ("Purchasing") issued an invitation for vendors to bid on a contract to provide behavioral health and substance abuse services on behalf of the Idaho Department of Health and Welfare ("IDHW"), as part of Idaho's Behavioral Health Plan ("IBHP"). Carelon Behavioral Health, Inc., formerly known as Beacon Health Options, Inc. ("Carelon"), was one of three bidders and was initially selected as the winner of the contract. However, the other two bidders, Magellan Healthcare ("Magellan") and United Behavioral Health ("Optum"), both challenged the Administration's notice of intent to award the contract to Carelon, contending that Carelon was ineligible to bid under Idaho Code section 67-9230(8) because the State had previously paid Carelon for services they argued were used in creating the specifications of the contract. The Director of Administration ("Director") appointed a determinations officer to consider the matter and, following receipt of the determinations officer's recommendations, ultimately agreed that Carelon was ineligible to bid. The contract was subsequently awarded to Magellan.

Carelon subsequently filed a complaint for declaratory relief and petition for extraordinary writ against the State and Magellan, seeking to overturn the Director's decision that it was barred from bidding on the contract. It also sought a writ of mandate to compel the termination of the contract with Magellan and reinstate the notice of intent to award the contract to Carelon. The district court dismissed the complaint for lack of subject matter jurisdiction, concluding that Carelon's claims were effectively a request for judicial review, which were prohibited by the State Procurement Act as it existed at the time, Idaho Code sections 67-9232(a)(ii) and 67-9229 (2023), and constituted an impermissible collateral attack on the Director's decision. Carelon now appeals to this Court. For the reasons explained below, we affirm.

# I.   FACTUAL AND PROCEDURAL BACKGROUND

## A.   Background on the State Procurement Act

The State Procurement Act mandates that state agencies seeking to acquire property and services must do so by engaging in an open and competitive process in order to "maximize the value received by the state with attendant benefits to the citizens." I.C. § 67-9202(1)-(2). The Act creates the Division of Purchasing within the Department of Administration. I.C. § 67-9204(1). The Purchasing Administrator, who is appointed by the Director, oversees the procurement process. *Id*.

To secure a contract for services (also called a procurement), the State issues a solicitation, such as a request for a proposal, an invitation to bid, or an invitation to negotiate. I.C. §§ 67-9208(2), 67-9209. After the State receives bids from interested vendors, Purchasing coordinates an objective scoring and evaluation process to identify the chosen contractor. I.C. § 67-9210(1); IDAPA 38.05.01.081. The State may also engage in additional rounds of negotiations with the bidders when the evaluation process reveals that further negotiation could result in a more advantageous contract or reduced costs to the State. IDAPA 38.05.01.084.01.d. The chosen contractor must be the "lowest responsible bidder," which means the vendor whose bid—after comparative performance evaluations have been conducted and "the relative score of valued specifications" have been weighed in accordance with the specifications—"reflects the lowest acquisition price to be paid by the state." I.C. §§ 67-9203(10), 67-9210(1).

Once the Purchasing Administrator has selected "the lowest responsible bidder," the bidders who were not selected have five working days to challenge the determination. I.C. § 67-9232(3)(a). A challenge is made to the Director by application and must explain the reasons why the challenger believes the Purchasing Administrator's determination is erroneous. *Id*. The Director then has five days to take one of three prescribed courses of action with respect to the challenge: (1) deny the application; (2) appoint a determinations officer, who is an independent agency adjudicator to provide a recommendation to the Director as to whether the selection of the "lowest responsible bidder" was correct; or (3) appoint a determinations officer with the authority to conduct a contested case hearing pursuant to the Idaho Administrative Procedure Act ("APA"). I.C. § 67-9232((3)(a)(i)-(iii). "Only appeals conducted as contested cases [the third prescribed course of action] pursuant to section 67-9232(3)(a)(iii), Idaho Code, shall be subject to the judicial review provisions of [the APA]." I.C. § 67-9229(1).

3

B. **Factual Background**

1. *The State begins the procurement process for the administration of the Idaho Behavioral Health Plan.*

In December 2021, Purchasing, acting on behalf of IDHW, issued an invitation to negotiate (the "ITN") to "secure a Contractor to serve as a Managed Care Organization (MCO) to provide IDHW with administrative support services to operate the [IBHP]." The ITN detailed the negotiation process, the requirements for a responsive bid submission, and the scope of services to be provided by the MCO in administering the IBHP. Three vendors submitted timely bids or proposals in response to the ITN: Carelon, Magellan, and Optum. A nine-member committee, whose members were not employees of Purchasing, evaluated the three proposals based on technical merit and cost. After reviewing the evaluations, the Purchasing Administrator informed the bidders that Carelon and Magellan were selected as the two finalists to proceed to the next stage of negotiations; as the lowest-ranking bidder, Optum was not invited to continue negotiating.

Purchasing then continued negotiations with Carelon and Magellan, and at the conclusion of those negotiations each finalist submitted its best and final offers. The committee evaluated those offers for technical merit and cost. Carelon received the highest overall score, and the Purchasing Administrator subsequently sent letters to all bidders informing them of the Administration's intent to award the contract to Carelon.

2. *Magellan and Optum challenge the intent to award Carelon the IBHP contract.*

After receiving notice of the intent to award the contract to Carelon, both Optum and Magellan challenged that decision. Magellan and Optum contended that Carelon was prohibited from submitting a bid by Idaho Code section 67-9230(8), which provides that a vendor cannot submit a bid if the vendor was paid for services used to prepare the specifications:

> No vendor or related party, or subsidiary, or affiliate of a vendor, may submit a bid to obtain a contract to provide property to the state, if the vendor or related party, or affiliate or subsidiary was paid for services used in preparing the specifications or if the services influenced the procurement process.

I.C. § 67-9230(8). Carelon had previously contracted with IDHW to develop a November 2019 report (the "2019 Report") on best-practices for a behavioral health crisis response system, which provided "high-level recommendations as to a 'Crisis Service Array' that the State could implement." Magellan and Optum each argued this report was used to prepare the ITN

4

specifications and influenced the procurement process, thereby rendering Carelon ineligible to bid on the IBHP contract.

In response to Optum's and Magellan's challenges, the Director appointed a determinations officer pursuant to Idaho Code section 67-9232(a)(ii), to issue a recommendation on whether the selection of Carelon as "the apparently successful bidder" was incorrect "because of a prior contract directly issued by [IDHW]" that precluded it from submitting a bid. The determinations officer provided the three bidders an opportunity to submit written legal arguments, additional documents, and written responses to the other parties' submissions. The bidders were also permitted to participate in oral arguments. All three bidders took advantage of each of those opportunities.

After reviewing the submitted materials, including the 2019 Report and the ITN, the determinations officer issued his recommendation. The determinations officer concluded that the 2019 Report was used to prepare part of the ITN's specifications; therefore, Carelon was precluded from submitting a bid on the contract under Idaho Code section 67-9230(8). In reaching this conclusion, the determinations officer compared the "eight essential core system components" of a crisis system of care outlined in the 2019 Report with the specifications contained in the ITN and determined that six of the 2019 Report components were nearly identical to specifications in the ITN: (1) a 24/7 hotline with triage and referral services that can track and offer "coordination of care in real time"; (2) Mobile Response Requirements that serve the special needs of children; (3) crisis centers that offer a dedicated first-responder drop-off area; (4) medication-assisted treatment solutions for substance abuse; (5) 23-hour psychiatric crisis stabilization services for adults; and (6) crisis collaboration between law enforcement, paramedics, other first-responders, and community organizations.

The same day the determinations officer submitted his recommendation, Carelon sent a letter to the Director requesting an opportunity for the parties to submit additional statements in response to the recommendation. The Director subsequently issued an order adopting the determination officer's record of materials and allowing each of the parties to submit additional statements regarding whether the Director should adopt the determinations officer's recommendation. All three parties submitted additional statements. The Director then issued a decision accepting the determinations officer's recommendation and directing the Purchasing

Administrator to rescind the letter of intent to award the contract to Carelon in accordance with the Procurement Act.

3. *The contract is ultimately awarded to Magellan.*

Based on the Director's decision, the Purchasing Administrator immediately issued letters to each of the three original bidders announcing its rescission of the earlier notice of intent to award the contract to Carelon. Because Magellan had previously been identified as a finalist, the Purchasing Administrator elected to engage in an additional round of negotiations with just Magellan. Once the negotiations had concluded, the Purchasing Administrator issued a notice of intent to award the contract to Magellan. The Purchasing Administrator also sent a letter to Optum notifying it of the award but did not send a similar letter to Carelon because Carelon had been determined ineligible to bid, and its earlier scores had been removed from the score tabulations.

Carelon then submitted a challenge to the Director, contending, among other things, that the Director erroneously concluded it was ineligible to bid and that the Purchasing Administrator improperly modified the ITN to award the contract to Magellan. The Director declined to appoint a determinations officer to consider the challenge but sent Carelon a letter explaining that decision. The Director explained that Carelon lacked standing to challenge the contract award to Magellan because it had already been determined that Carelon was not an eligible bidder. Nevertheless, the Director also addressed Carelon's arguments on the merits and affirmed the Purchasing Administrator's decision to award the contract to Magellan. The Purchasing Administrator then prepared the contract between the State and Magellan for the administration of the IBHP, which was executed on June 16, 2023.

## C. Procedural Background

Two weeks after the Director sent the letter rejecting Carelon's challenge to the Magellan contract award, Carelon filed a complaint in district court against a variety of state officials, including the Administration, IDHW, and the Purchasing Administrator, as well as Magellan. Carelon subsequently filed an amended complaint, seeking a declaratory judgment that: (1) the Director's determination that Carelon was ineligible to bid on the ITN was erroneous under Idaho Code section 67-9230(8); (2) Magellan is not eligible for an award of the contract under the ITN because Magellan lacks the required accreditation; (3) the Administration violated the State Procurement Act "by modifying the ITN's scope of work during its negotiations with Magellan"; (4) the Administration violated the State Procurement Act by executing a contract with a non-

bidding Magellan affiliate; and (5) the State Procurement Act is unconstitutional to the extent that it prohibits any form of judicial review of the Director's decisions. Alternatively, Carelon sought a declaration that section 67-9230(8) is unconstitutional because it violates the separation of powers doctrine and is void-for-vagueness. Carelon further sought a writ of mandate ordering the Director and Purchasing Administrator to reinstate Carelon as the lowest responsible bidder and reinstate its previous notice of intent to award the contract to Carelon. Optum moved to intervene in this action, which the district court granted pursuant to Idaho Rule of Civil Procedure 24(a)(2).

The State moved to dismiss the amended complaint for lack of subject matter jurisdiction under Idaho Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief may be granted under Idaho Rule of Civil Procedure 12(b)(6). Magellan joined the State's motion and separately moved to dismiss on the same grounds as argued by the State. Carelon filed a consolidated opposition to the motions to dismiss, to which both the State and Magellan filed responsive briefs. Optum provided briefing in which it argued against dismissal for lack of subject matter jurisdiction but in support of dismissal for failure to state a claim for relief.

Following a hearing, the district court granted the defendants' motions to dismiss. The district court first concluded it lacked subject matter jurisdiction over Carelon's requests for declaratory judgment on counts one through four because these claims essentially required the court to perform a judicial review of the Director's decision, which is expressly prohibited by the State Procurement Act, Idaho Code section 67-9229. The district court also concluded that the State was entitled to sovereign immunity on those same claims. The district court then concluded that the claim for a writ of mandate also improperly sought judicial review and was not appropriate under the circumstances because Carelon had not established either a clear right to the relief sought or that it lacked an appropriate remedy through the administrative process. Next, the district court held that the State Procurement Act's preclusion of judicial review does not violate the separation of powers doctrine but is a constitutionally valid, legislatively created limit of the district court's appellate jurisdiction. Finally, the district court concluded that Idaho Code section 67-9230(8) is not void-for-vagueness. Carelon timely appealed to this Court.

## II.    STANDARD OF REVIEW

This Court freely reviews questions of law, including "whether dismissal for lack of jurisdiction was properly granted." *Tucker v. State*, 162 Idaho 11, 17, 394 P.3d 54, 60 (2017) (citation omitted). Similarly, the constitutionality of a statute is also "a question of law over which

7

this Court exercises free review." *In re Jerome Cnty. Bd. of Comm'rs*, 153 Idaho 298, 308, 281 P.3d 1076, 1086 (2012) (citing *Lochsa Falls, L.L.C. v. State*, 147 Idaho 232, 237, 207 P.3d 963, 968 (2009)).

## III.  ANALYSIS

**A.  The district court did not err in dismissing Carelon's first four counts for declaratory judgment for lack of subject matter jurisdiction.**

Carelon contends the district court erred in dismissing its complaint for lack of subject matter jurisdiction based on its conclusion that Carelon's declaratory judgment action violated the prohibition against judicial review of the Administration's actions in non-contested cases. *See* Idaho Code sections 67-9229 and 67-9232. Carelon acknowledges that Idaho Code sections 67-9229 and 67-9232 deprived the district court of any authority to conduct an *appellate* review of procurement decisions under the Idaho APA, but it argues that the district court maintained *original* jurisdiction to consider actions under Idaho Code section 10-1202, Idaho's Declaratory Judgment Act, that seek a determination of rights arising under a statute. Carelon argues its complaint was not a petition for judicial review of the Director's procurement decisions but an original action seeking a declaration of its rights to bid on the IBHP contract under Idaho Code section 67-9230(8). In support of this argument, Carelon relies on *City of Ririe v. Gilgen*, 170 Idaho 618, 515 P.3d 255 (2022), and *Employers Resource Management Company v. Kealey*, 166 Idaho 449, 561 P.3d 731 (2020), for the proposition that interested parties may collaterally attack agency determinations—even when prohibited from filing petitions for judicial review—by filing an original action seeking declaratory relief. For the reasons explained below, Carelon's reliance on these cases is misplaced. We agree with the district court that Carelon's complaint would have required the court to perform judicial review of the Director's decisions in contravention of the legislature's express prohibition in the State Procurement Act.

The Idaho Constitution vests district courts with two distinct types of jurisdiction, original and appellate: "The district court shall have original jurisdiction in all cases, both at law and in equity, and such appellate jurisdiction as may be conferred by law." Idaho Const. art. V, § 30. "When a district court entertains a petition for judicial review, it does so in an appellate capacity." *Burns Holdings, LLC v. Madison Cnty, Bd. of Cnty. Comm'rs*, 147 Idaho 660, 662, 214 P.3d 646, 648 (2009) (citations omitted). "A party's right to 'appeal' an administrative decision, i.e., to obtain judicial review, is governed by statute." *Id*. (footnote and citation omitted).

"The [l]egislature's authority to define the right of judicial review is found in article V, section 13 of the Idaho Constitution[,]" which provides, in pertinent part: "the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the Supreme Court[.]" *Id.* at 662 n.1, 214 P.3d at 648 n.1; Idaho Const. art. V, § 13. Thus, "[a]ctions by state agencies are not subject to judicial review unless expressly authorized by statute." *Laughy v. Idaho Dep't of Transp.*, 149 Idaho 867, 870, 243 P.3d 1055, 1058 (2010) (citing I.R.C.P. 84(a)(1)).

Here, all parties agree that there is no statute authorizing judicial review of the Director's decisions because the legislature has expressly restricted judicial review of decisions made under the State Procurement Act to those decisions reached following contested cases hearings conducted pursuant to Idaho Code section 67-9232(3)(a)(iii). I.C. §§ 67-9229(1); 67-9232(7). It is undisputed that the Director's decisions at issue here did not follow from a contested case hearing pursuant to Idaho Code section 67-9232(3)(a)(iii). Instead, the Director's decisions followed from the appointment of a determinations officer to make a recommendation pursuant to Idaho Code section 67-9232(3)(a)(ii). Nevertheless, Carelon argues it may collaterally attack the decisions at issue by way of an original, declaratory judgment action pursuant to Idaho Code section 10-1202:

> Any person interested under a deed, will, written contract or other writings constituting a contract or any oral contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

I.C. § 10-1202.

Whether Carelon is appealing an agency action or pursuing an original, declaratory judgment action depends on the substance of Carelon's claims. *See Bones v. City of Lewiston*, 107 Idaho 844, 849, 693 P.2d 1046, 1051 (1984) (rejecting an argument that an appeal of a denial of a rezoning application was a declaratory judgment action seeking interpretation of statute because the argument "exalt[ed] form over substance"). A challenge to a final agency action is an appeal, and as we noted above, appeals of final agency actions must be authorized by the legislature. *Burns Holdings*, 147 Idaho at 662, 214 P.3d at 648. An agency's final decision "may not later be collaterally attacked by way of declaratory judgment action." *Chavez v. Canyon Cnty., State, ex rel. its Duly Elected Bd. of Cnty. Comm'rs*, 152 Idaho 297, 302, 271 P.3d 695, 700 (2012) (quoting *Carter v. State, Department of Health & Welfare*, 103 Idaho 701, 702, 652 P.2d 649, 650 (1982)).

The district court concluded that the substance of Carelon's first four claims demonstrated that it was attempting to collaterally attack the Director's decisions by re-styling its complaint as a declaratory judgment action:

> [Carelon's] assertion that this [c]ourt is sitting in its original jurisdiction simply because [Carelon] styled its complaint as a declaratory judgment action ignores what [Carelon] ultimately wants the [c]ourt to do. At bottom, [Carelon] wants the [c]ourt to review and overturn the Department of Administration's determination that [Carelon] was ineligible to bid on the ITN and reinstate [Carelon] as the lowest responsible bidder. Whether this [c]ourt is sitting in an original or an appellate capacity depends on the substance of a party's claims, not how those claims are couched. Setting aside an agency action or determination is a function of judicial review, and agency actions "are not subject to judicial review unless expressly authorized by statute." *Laughy v. Idaho Dep't of Transp.*, 149 Idaho 867, 870, 243 P.3d 1055, 1058 (2010).

We agree with the district court.

We recently explained in *Sommer v. Misty Valley, LLC*, 170 Idaho 413, 420, 511 P.3d 833, 840 (2021), that Idaho's Declaratory Judgment Act "does not create any new substantive rights, but rather, authorizes a form of relief." *Id*. Carelon contends that this Court has sanctioned collateral attacks on agency decisions that are otherwise not subject to judicial review by way of original declaratory judgment actions in *City of Ririe v. Gilgen*, 170 Idaho 619, 515 P.3d 255 (2022), and *Employers Resource Management Company v. Kealey*, 166 Idaho 449, 461 P.3d 731 (2020). The district court analyzed these same cases below and concluded they did not support Carelon's position because of crucial distinctions regarding the type of claims at issue in those cases—a claim asserted under Local Land Use Planning Act ("LLUPA") in *City of Ririe*, and a claim regarding the constitutionality of a statute in *Employers Resource Management Company*. The district court concluded the Declaratory Judgment Act was a proper vehicle to secure relief in those cases based on pre-existing statutory or constitutional claims, and neither case stood for the proposition that the Declaratory Judgment Act created an *independent* cause of action for a claimant to appeal an agency action. The district court's conclusion is correct.

*City of Ririe* involved a county board of commissioners' decision to grant an applicant a conditional use permit to place a mobile home on her property located in the City's "area of impact." 170 Idaho at 622, 525 P.3d at 258. The City challenged this decision in district court via a petition for judicial review, pursuant to LLUPA, that requested declaratory relief. *Id*. In that petition, the City asserted that the board of commissioners had erroneously approved the

10

application because it failed to apply the City's zoning ordinances as required by an agreement between the county and the City. *Id*. The district court granted the petition after concluding that the City had standing to obtain judicial review under LLUPA because the City was "an affected person with a bona fide interest in real property" pursuant to Idaho Code section 67-6521(1)(a). *Id*. at 622-24, 515 P.3d at 258-260.

The landowner appealed the district court's decision. *Id*. at 624, 515 P.3d at 260. This Court disagreed with the district court and held that the City did not have standing to pursue a petition for judicial review under section 67-6521(1)(a) of LLUPA because the City was *not* an "affected person" and vacated the district court's judgment. *Id*. at 627-28, 515 P.3d at 263-64. In so holding, this Court emphasized that the City had alternative means to secure declaratory relief. Namely, it could have filed an original action under the Declaratory Judgment Act seeking a determination of whether the County had an obligation to apply the City's ordinances to the landowner's application for a conditional use permit. *Id*. at 628, 515 P.3d at 264. Or, it could have filed an original action authorized under a *different* section of LLUPA, section 67-6527, which permits a governing board (such as the City) to "institute a civil action in district court to enforce compliance with this chapter or any ordinance or regulation enacted hereunder." *Id*. at 628, 515 P.3d at 264. Thus, in *City of Ririe*, there were independent contractual and statutory bases for the City to pursue a declaratory judgment action.

There are two reasons why *City of Ririe* is distinguishable from this case. First, unlike LLUPA, which explicitly provides an original cause of action for a governing board to challenge a zoning decision that is not in compliance with the applicable ordinances, the State Procurement Act provides no similar cause of action for a vendor denied a State contract to challenge either the Director's determination that it was ineligible to bid or the Administration's decision to award the contract to a different vendor. Second, the Declaratory Judgment Act does not provide an independent basis for Carelon's claims because Carelon did *not* merely seek a determination of its rights under the State Procurement Act. Rather, Carelon sought a court order requiring the Director to cancel the contract award to Magellan and requiring the Director to award the contract to Carelon. Accordingly, Carelon was seeking to collaterally attack the Director's decisions by way of a declaratory judgment action. Contrary to Carelon's contention, *City of Ririe* does not stand for the proposition that a claimant can collaterally attack the decisions at issue and circumvent the

11

legislature's prohibition on judicial review simply by filing a complaint for declaratory relief under Idaho Code section 10-1202. Accordingly, Carelon's reliance on *City of Ririe* is misplaced.

Similarly, *Employers Resource Management Company* also does not stand for the proposition that a claimant can collaterally attack an agency decision via a declaratory judgment action to circumvent a prohibition on judicial review. *Employers Resource Management Company* involved a decision by the Economic Advisory Council (the "Council"), a division of the Idaho Department of Commerce, to issue a $6.5 million tax credit to Paylocity under the Idaho Reimbursement Incentive Act ("IRIA"). 166 Idaho 449, 451, 461 P.3d 731, 733 (2020). Employers Resource Management Company ("Employers"), an Idaho-based competitor to Paylocity, filed a complaint for declaratory relief against the Idaho Department of Commerce, alleging the IRIA was unconstitutional. *Id*. Among its arguments, Employers alleged the IRIA is unconstitutional because it violates the separation of powers doctrine by limiting judicial review. *Id*.

This Court ultimately upheld the constitutionality of the IRIA and concluded it does not limit judicial review. *Id*. at 738-39, 461 P.3d at 456-57. In so holding, this Court expressly noted that Employers' claim did *not* challenge an agency action: "Importantly, although we previously determined that Employers has *competitor standing* to challenge an agency action under IRIA, this appeal does not actually present a challenge to a specific action taken by the Department. Rather, Employers has focused solely on the constitutionality of IRIA itself." *Id*. at 456, 461 P.3d at 738. (emphasis in original). This Court further noted that, whereas the IRIA did not authorize a competitor to seek appellate review of the Council's decision, a declaratory judgment action against the Council was nevertheless authorized by a different statute: Idaho's APA, Idaho Code section. 67-5278. *Id*. This provision permits a declaratory judgment action that challenges the validity or applicability of an administrative rule, such as the Council's rules governing the issuance of a tax credit. I.C. § 67-5278 Accordingly, Employers' constitutional claims against the Council, while ultimately unsuccessful, did not circumvent a prohibition on judicial review and were properly brought as a declaratory judgment action.

Importantly, the provision of the Idaho APA at issue in *Employers* is narrow, referencing *only* the validity or applicability of *administrative rules*. I.C. § 67-5278. Nothing in the plain language of that section supports Carelon's argument that this Court's holding in *Employers* authorizes a declaratory judgment action challenging an agency's interpretation and application of a *statute*. In other words, *Employers* does not sanction Carelon's challenges to the Director's

12

interpretation and application of the State Procurement Act. Simply put, neither *City of Ririe* nor *Employers* support Carelon's contention that it may circumvent the State Procurement Act's limitations on judicial review of the Director's decisions by way of a declaratory judgment action.

As the district court here aptly noted, "[a] party with standing may always challenge the constitutionality of a statute: 'It is a fundamental principle of constitutional law that a person can be heard to question the constitutionality of a statute only when and insofar as it is being, or about to be, applied to his disadvantage.' " (quoting *Employers Resource Management Co.,* 166 Idaho at 456, 461 P.3d at 738). Constitutional challenges are distinguished from claims that seek review of an agency's determinations. Whereas constitutional claims properly invoke a district court's original jurisdiction, claims that seek to overturn an agency decision without any statutory basis authorizing judicial review do not. This is precisely why—despite dismissing Carelon's first four claims for lack of subject matter jurisdiction—the district court did not dismiss Carelon's constitutional claim that the State Procurement Act violates the separation of powers doctrine (the same type of claim raised by Employers with respect to the IRIA) and addressed that claim on the merits.

As a final argument in support of its contention that the district court erred in construing its first four claims as a request for judicial review and dismissing them for lack of subject matter jurisdiction, Carelon contends the district court misapplied *Chavez v. Canyon County*, 152 Idaho 297, 271 P.3d 695 (2012) against Carelon. Though not cited by the parties in their briefing before the district court, the district court nevertheless relied on *Chavez* to support its conclusion that Carelon's complaint requested judicial review in contravention of the statutory procedure set forth under the State Procurement Act. The district court interpreted *Chavez* to hold that a declaratory judgment action "cannot be used to collaterally attack agency actions[.]" (citing *Chavez*, 152 Idaho at 302, 271 P.3d at 700). Carelon contends that *Chavez* actually supports its arguments in favor of the district court's original jurisdiction because it held that judicial review is not mandatory, and a claimant can assert a declaratory judgment action when not used "as a substitute to an untimely appeal." (quoting *Id*. at 302, 271 P.3d at 700). Carelon contends that because declaratory judgment actions are permissible even when a claimant is entitled to judicial review, a claimant may collaterally attack an agency decision by way of a declaratory judgment action. However, a careful reading of *Chavez* refutes Carelon's contention.

13

In *Chavez*, this Court expressly stated that "the proper method of contesting an agency or judicial decision is by appeal" and "an order or judgment may *not* later be collaterally attacked by means of a declaratory judgment action." *Id.* at 302, 271 P.3d at 700 (emphasis added) (quoting *Carter v. State, Dep't of Health & Welfare*, 103 Idaho 7021, 702, 652 P.2d 649,650 (1982)). *Chavez* did not involve a collateral attack of final agency action; rather the appellant brought an *ultra vires* challenge asserting that Canyon County acted without authority in issuing a tax deed without first complying with the notice requirements under Idaho Code section 63-1005(4)(d). *Id*. Thus, this Court concluded that Chavez "was not appealing the final decision to issue a tax deed," but was instead "attacking the authority of the County to proceed beyond the notice." *Id*. Notably, judicial review of the county commissioner's tax decision would have been available to Chavez, pursuant to Idaho Code section 63-1006, had Chavez timely pursued that course of action. *Id*. at 302-03, 271 P.3d at 700-01. Chavez did not timely file a petition for judicial review, but this Court held that fact was irrelevant to a final resolution of the matter because Chavez's *ultra vires* claim was not appellate in nature. *Id*. Because Chavez's *ultra vires* challenge provided a proper, substantive ground for a declaratory judgment action, this Court ultimately affirmed the district court's conclusion that the tax deed's imposition of a summary flat fee violated section 63-1005(4)(d)'s requirement of an itemized statement detailing all costs and fees. *Id*. at 303-04, 271 P.3d at 701-02.

Here, the district court correctly recognized that Carelon's complaint did not involve an *ultra vires* challenge. The district court explained how Carelon's claims were essentially an attempt to re-litigate the Department's determination regarding Carelon's eligibility to bid on the ITN and the Department's decision to award Magellan the IBHP contract. Thus, the district court concluded that, unlike *Chavez*, Carelon *was* attempting to collaterally attack the Department's actions by substituting judicial review with a declaratory judgment action. In other words, the district court concluded that the substance of Carelon's complaint demonstrated that it was an appeal from an agency action, rather than a declaratory judgment action, despite its form. We agree. To hold otherwise would exalt form over substance. *See Bone v. City of Lewiston*, 107 Idaho 844, 849, 693 P.2d 1046, 1051 (1984) (Rejecting appellant's argument that he sought an interpretation of Idaho Code section 67-6511, which requires a zoning ordinance to be in conformity with the City's comprehensive plan, because it "exalt[ed] form over substance" when

14

Appellant's complaint challenged the city council's decision to reject his application to have his land rezoned).

In sum, the district court did not err in concluding Carelon's first four claims were a request for judicial review expressly prohibited by the State Procurement Act, Idaho Code sections 67-9232 and 67-9229. Accordingly, we conclude the district court did not err in dismissing these claims for lack of subject matter jurisdiction. In light of this conclusion, we decline to address Carelon's and the State's arguments concerning whether the first four claims were barred by sovereign immunity.

**B.      The district did not err in concluding a writ of mandate is not appropriate under the circumstances.**

Carelon argues that if this Court concludes the district court did not have jurisdiction over its claims for declaratory relief, then the district court erred in concluding it is not entitled to a writ of mandate. Carelon contends the Department had a "clear legal duty" to award it the contract because it was the "lowest responsible bidder." Accordingly, Carelon contends it is entitled to the relief sought, and because Idaho Code sections 67-9229 and 67-9232 prohibit it from filing a petition for review of the Department's determinations, Carelon argues it has no remedy at law other than mandamus relief.

Section 7-302 of the Idaho Code authorizes a court to issue a writ of mandamus, or an order, "to any inferior tribunal, corporation, board or person, to compel the performance of an act" in accordance with the person's or entity's legal duty. "The writ of mandate is an extraordinary remedy requiring extraordinary circumstances." *Rogers v. Gooding Pub. Joint Sch. Dist. No. 231*, 135 Idaho 480, 482, 20 P.3d 16, 18 (2001), *overruled on other grounds by City of Osburn v. Randel*, 152 Idaho 906, 277 P.3d 353 (2012). A party seeking a writ of mandate must establish "a clear legal right to the relief sought." *Brady v. City of Homedale*, 130 Idaho 569, 571, 944 P.2d 704, 706 (1997). "[A] writ of mandate will not issue to 'compel the performance of a discretionary act.'" *Id*. (quoting *McCuskey v. Canyon Cnty.*, 123 Idaho 657, 663, 851 P.2d 953, 959 (1993)); I.C. § 7–302. "A writ of mandamus will lie if the officer against whom the writ is brought has a clear legal duty to perform and if the desired act sought to be compelled is ministerial or executive in nature, and does not require an exercise of discretion." *Cowles Pub. Co. v. The Magistrate Ct. of the First Jud. Dist. of State, Cnty. of Kootenai*, 118 Idaho 753, 760, 800 P.2d 640, 647 (1990).

15

In addition, a writ of mandate is not available when there is an adequate alternative remedy. *Cover v. Idaho Bd. of Corr.*, 167 Idaho 721, 733, 476 P.3d 388, 400 (2020).

Here, the district court concluded that Carelon's petition for a writ of mandate was inappropriate because it was the functional equivalent of a petition for review:

> [T]he [c]ourt agrees with Defendants that a writ of mandate, an extraordinary remedy at law, is an inappropriate remedy for much the same reasons a declaratory judgment action is inappropriate under these circumstances. First, there is no question [Carelon]'s petition for a writ of mandate seeks to re-litigate arguments that it made in the administrative proceeding and the decision rendered there. [Carelon]'s request for a writ of mandate is another attempt for [Carelon] to use a different procedural vehicle to accomplish what the Legislature intended to prohibit—this [c]ourt reviewing determinations the Department made with respect to who the lowest responsive bidder is on the ITN. The [c]ourt disagrees that a plaintiff can use creative procedural maneuvering to accomplish indirectly what the Legislature directly prohibited.

The district court further concluded that Carelon had not established a clear legal right to relief sought.

There is no error with the district court's conclusions. Carelon's petition for a writ of mandate sought to "compel the Director and Administrator to terminate the contract with Magellan Healthcare, rescind the notice of intent to award the contract to 'Magellan Heath,' and reinstate the notice of intent to award a contract to [Carelon.]" Thus, Carelon's petition for a writ of mandate requested the same relief as did its claims for declaratory judgment and would require re-litigation of the same issues raised in those claims. In other words, for Carelon to prevail in its request for a writ of mandate, the district court would have been required to perform judicial review of the Director's decisions. "It is fundamental that a writ will not function as the equivalent of an appeal or a petition for review." *The Associated Press v. Second Jud. Dist.*, 172 Idaho 113, 120, 529 P.3d 1259, 1266 (2023). Accordingly, the district court did not err in dismissing Carelon's petition for a writ of mandate.

**C.    The State Procurement Act's restrictions on judicial review do not violate the separation of powers doctrine under the Idaho Constitution.**

Carelon contends the State Procurement Act violates the separation of powers doctrine under the Idaho Constitution by precluding judicial review of the Director's decisions in cases that did not proceed as contested case hearings. Carelon argues the State Procurement Act effectively enables the Director to decide which decisions will escape judicial scrutiny by allowing the Director to decide whether a challenge to a procurement decision will be handled as a contested

case hearing. Carelon argues that, while the legislature had authority to define the boundaries of the district court's appellate jurisdiction, it had no authority to usurp the district court's authority to exercise its original jurisdiction by "insulat[ing] an administrative agency's decision entirely from judicial scrutiny[.]"(quoting *Laughy v. Idaho Dep't. of Transp.*, 149 Idaho 867, 870, 243 P.3d 1055, 1058 (2010)). For the reasons explained below, Carelon's arguments reflect a misunderstanding of the district court's decision and the effect of the legislature's restriction of judicial review under the State Procurement Act. Accordingly, we hold the State Procurement Act does not violate the Idaho Constitution's separation of power's doctrine.

Article 2, section 1 of the Idaho Constitution divides the powers of government into three distinct departments and provides that no department shall exercise the powers that belong to another:

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

IDAHO CONST. art. II, § 1. Accordingly, under the separation of powers doctrine, the legislature is prohibited "from usurping powers properly belonging to the judicial department[.]" *Idaho Sch. For Equal Educ. Opp. v. State*, 140 Idaho 586, 597, 97 P.3d 453, 464 (2004) (quoting *In re SRBA Case No. 39576*, 128 Idaho 246, 255, 912 P.2d 614, 623 (1995)). Article V of the Idaho Constitution, which sets forth the powers of the judicial branch, expressly provides that "[t]he legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it . . . ." IDAHO CONST. art. V, § 13.

The jurisdictional parameters of the district courts are outlined in article V, section 20: "The district court shall have original jurisdiction in all cases both at law and in equity, and such *appellate jurisdiction as may be conferred by law.*" IDAHO CONST. art. V, § 20 (emphasis added). "When a district court entertains a petition for judicial review, it does so in an appellate capacity." *Burns Holdings, LLC v. Madison Cnty. Bd. of Cnty. Comm'rs*, 147 Idaho 660, 662, 214 P.3d 646, 648 (2009). Thus, "[a] party's right to 'appeal' an administrative decision, i.e., to obtain judicial review, is governed by statute." *Id*.

Here, the district court concluded the State Procurement Act did not violate the separation of powers doctrine because Carelon's complaint invoked the district court's appellate jurisdiction

17

rather than its original jurisdiction, and the Idaho Constitution empowers the legislature to restrict a court's appellate jurisdiction through statutory enactments:

> [T]he [c]ourt cannot grant [Carelon] the relief it seeks because the [c]ourt disagrees with the premise that the [c]ourt is sitting in its original jurisdiction simply because [Carelon] styled this action as a declaratory judgment action. [Carelon] wants the [c]ourt to review and overturn an administrative decision that found it ineligible to bid on the ITN. This is a function of judicial review in which a district court sits in an appellate capacity. The Idaho Constitution is clear the Legislature controls a district court's appellate jurisdiction. There is no separation of powers violation here[.]

Thus, while the district court recognized the State Procurement Act restricted its *appellate* jurisdiction, the district court did not*,* contrary to Carelon's assertion, hold that the State Procurement Act also restricted the court's *original* jurisdiction.

Importantly, while Carelon argues the State Procurement Act violates the separation of powers doctrine in as much as it removes the district court's *original* jurisdiction, Carelon does *not* argue the State Procurement Act violates the separation of powers doctrine because it limits the courts' *appellate* jurisdiction. Carelon concedes that appellate jurisdiction is conferred on the courts only by statute, and the State Procurement Act limited the district court's appellate jurisdiction to review the Director's decisions. We have held that the first four counts of Carelon's complaint, as well as Carelon's petition for a writ of mandate, did not assert an original action but instead invoked the court's appellate jurisdiction by challenging the Director's determinations. There is no indication from the record that the district court failed to exercise its original jurisdiction. The State Procurement Act does not restrict a court's original jurisdiction.

Notwithstanding the aforementioned analysis, Carelon contends that the State Procurement Act violates the separation of powers doctrine because it gives the Director full discretion to determine whether its decision will be subject to judicial review, which Carelon argues is inconsistent with this Court's holdings in *Wood v. Idaho Transportation Department*, 172 Idaho 300, 312, 532 P.3d 404, 416 (2023); *State v. Finch*, 79 Idaho 275, 281, 315 P.2d 529, 531-32 (1957); and *In re SRBA Case No. 39576*, 128 Idaho 246, 259, 912 P.2d 614, 627 (1995). Carelon's reliance on these cases is misplaced. For example, in *Wood*, this Court held that the Idaho State Police's authority to promulgate rules regarding the admission of breath alcohol concentration tests in an administrative license suspension hearing did not violate the separation of powers doctrine. 172 Idaho at 312, 532 P.3d at 416. *Wood* did not concern an agency's discretion to determine

18

whether its decisions will be subject to judicial review or a statutory limitation on judicial review at all; accordingly, it is not instructive.

Similarly, neither *Finch* nor *In re SRBA Case No. 39576* concerned a statutory limit on the availability of judicial review over an agency's decision or a delegation of authority to determine whether appellate review was available. *Finch* concerned an agency revocation of a property interest in a dredge mining permit, and this Court held that due process requires an opportunity for judicial review when the deprivation of a protected right is at stake. 79 Idaho at 283, 315 P.2d at 533.

*In re SRBA* concerned the 1994 Snake River Basin Adjudication statutes that required the courts, when performing judicial review of the report of the Director of the Idaho Department of Water Resources regarding the rights of water users in the water system, to "decree as reported" *all* unobjected to provisions contained in that report. 128 Idaho at 258, 912 P.2d at 626. This Court held that the statute unconstitutionally stripped the courts of their authority "to apply the facts to the law and render a conclusion." *Id*. In reaching this holding, this Court noted that the issue was not a concern with the agency's fact-finding power, but rather a concern that the agency's report also drew legal conclusions regarding a person's water rights. *Id*. The agency's report, if taken at face value, could have the effect of depriving a person of a property right. *Id*. Therefore, like *Finch*, *In re SRBA* also concerned property rights and due process.

Accordingly, while *Finch* and *In re SRBA* stand for the proposition that due process requires an opportunity to seek judicial review of an agency decision that causes a deprivation of property rights, they do not stand for the proposition that the Idaho Constitution precludes the legislature from granting an agency discretion to determine which cases proceed as contested cases that are subject to judicial review. Carelon does not raise a due process challenge here or assert a deprivation of property rights. Accordingly, *Finch* and *In re SRBA* are not applicable.

As a final argument in support of its contention that the Procurement Act violates the separation of powers doctrine, Carelon cites to persuasive authority from the Hawaii and Missouri state supreme courts, which have held that their state legislatures may not preclude judicial review of administrative agency decisions. We are not persuaded these cases have any relevance in Idaho. Neither Hawaii nor Missouri utilize the same constitutional framework as Idaho regarding appellate jurisdiction. For example, Article 5, section 18 of the Missouri Constitution "requires administrative decisions to be 'subject to direct review by the courts.' " 846 S.W. 2d. at 200

(quoting Mo. Const., art. 7, § 18). In contrast, Article 5, sections 13 and 20, of the Idaho Constitution expressly grants the legislature authority to limit appellate review of an agency's decision. And in *Alakai Na Keiki, Inc. v. Matayoshi*, 277 P.3d 988, 1000-01 (Haw. 2012), the Hawaii Supreme Court refers to judicial review with respect to *constitutional* claims (in that case, the constitutionality of a sex offender registration statute), whereas this Court has classified those types of claims as original actions, distinguished from claims that challenge an agency decision and require judicial review. *See e.g.*, *Employers Resource Management Co. v. Kealey*, 166 Idaho 449, 461 P.3d 731 (2020).

In sum, while the State Procurement Act limits appellate review to instances where the Director initiates a contested case proceeding, this limitation is permissible under the Idaho Constitution, which grants the legislature the authority to statutorily define the parameters of the district court's appellate jurisdiction. The State Procurement Act does not restrict a district court's original jurisdiction. Accordingly, the State Procurement Act does not violate the separation of powers doctrine under Idaho's Constitution.

**D.      Idaho Code section 67-9230(8) is not void for vagueness under the Due Process Clause of the United States Constitution.**

Carelon contends that Idaho Code section 67-9230(8) is void for vagueness under the Due Process Clause of the United States Constitution, arguing the statute did not provide adequate notice to Carelon as to whether it was prohibited from submitting a bid in response to the ITN. Specifically, Carelon contends the statute, as applied by the Director, does not provide any standards of enforcement or guidelines for a vendor to know whether it "was paid for services used in preparing the specifications [of the ITN] or if the services influenced the procurement process." (quoting I.C. 67-9230(8)). Carelon maintains that it did not know that its 2019 Report influenced the specifications in the ITN here and further maintains that the crisis standards contained in the ITN were not based on the 2019 Report but rather a different, independent source. In raising this void for vagueness challenge, Carelon highlights a criminal component of the State Procurement Act set forth in Idaho Code section 67-9231(1): "Any person convicted of a violation of subsection … (8) of section 67-9230, Idaho Code, shall be guilty of a misdemeanor." Accordingly, Carelon argues this Court should apply the legal standard applicable to criminal statutes in deciding whether section 67-9230(8) is void for vagueness.

The State and Magellan raise several threshold issues concerning Carelon's ability to assert this argument before this Court. The State first argues Carelon's as-applied challenge is not preserved for appeal, contending Carelon asserted only a facial challenge before the district court. The State further contends Carelon lacks standing to challenge the criminal provision of the State Procurement Act because Carelon was "never subjected to any threat of criminal prosecution, was never prosecuted, and was never convicted of the crime in Idaho Code [section] 67-9231(1)." Accordingly, the State contends this Court should only address whether section 67-9230(8) is void for vagueness in relation to the civil component, i.e., ineligibility to bid. Magellan contends Carelon cannot assert an as-applied challenge at all because "the Procurement Act limits judicial review of the Director's application of Idaho Code section 67-9230(8)," thereby suggesting Carelon's as-applied challenge is really a request for judicial review.

For the reasons set forth below, we hold that: (1) Carelon lacks standing to assert a void-for-vagueness challenge to the criminal component of Idaho Code section 67-9230(8) at this stage of the proceeding because Carelon is not under a credible threat of prosecution where the one-year statute of limitations applicable to misdemeanors has expired; (2) Carelon has otherwise preserved its as-applied challenge; (3) Carelon's as-applied challenge is not precluded by the State Procurement Act's limitation on judicial review; and (4) Idaho Code section 67-9230(8) is not void for vagueness as applied to Carelon in this case.

1. *Carelon lacks standing to challenge the criminal component of Idaho Code section 67-9230(8) at this stage of the proceeding because it is not under a credible threat of prosecution where the one-year statute of limitations applicable to misdemeanors precludes prosecution.*

The State argues Carelon lacks standing to challenge the criminal component of Idaho Code section 67-9230(8) because Carelon was neither threatened with criminal prosecution nor convicted of violating that statute. In support of this argument, the State emphasizes that it is section 67-9231(1) that contains the criminal component—*not* section 67-9230(8). Because (1) Carelon was never prosecuted under section 67-9231(1) and (2) there is no ongoing threat of prosecution, the State argues Carelon may only challenge the civil provision of section 67-9230(8), related to a vendor's ineligibility to bid. Carelon replies that it has standing to challenge the criminal provision because it faces " 'a credible threat of prosecution' for conduct proscribed by the statute[.]" (*Quoting Holder v. Humanitarian L. Project*, 561 U.S. 1, 15 (2010)). We agree with

the State that Carelon lacks standing to challenge the criminal provision in section 67-9231(1) but has standing to challenge the civil provision in section 67-9230(8).

"Standing is a threshold requirement" of justiciability that, if raised, must be addressed before reaching the merits of a claim. *Arakaki v. Hawaii*, 314 F.3d 1091, 1097 (9th Cir. 2002); *Zeyen v. Pocatello/Chubbuck Sch. Dist. No. 25*, 165 Idaho 690, 698, 451 P.3d 25, 33 (2019). Under these standards, the plaintiff must demonstrate the following elements to establish standing: (1) an "injury-in-fact" that is "(a) concrete and particularized" and "(b) actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the challenged conduct; and (3) redressability through judicial action. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted).

Importantly, to ensure that an active controversy still exists, standing is a requirement that must be met at all stages of the litigation, not just at the time the complaint is filed. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). If an intervening circumstance deprives the plaintiff of a "personal stake in the outcome of the lawsuit," at any point during litigation, the action can no longer proceed and must be dismissed as moot. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–478 (1990) (internal quotation marks omitted).

Here, Carelon was never prosecuted under Idaho Code section 67-9231(1) for submitting a bid on the ITN in violation of section 67-9230(8), and the time for the State to do so has since passed. *See* I.C. § 19-403(1) (designating a one-year statute of limitations for the prosecution of a misdemeanor). Accordingly, Carelon has not demonstrated that is under a credible threat of prosecution for any conduct proscribed by section 67-9230(8). Therefore, Carelon lacks standing to challenge the criminal component of this statute and this issue is moot. Carelon maintains standing to challenge the civil provision of section 67-9230(8), regarding its eligibility to bid on a procurement.

### 2. *Carelon has preserved its as-applied challenge.*

The State contends that Carelon failed to preserve its as-applied challenge. The State argues Carelon only raised a facial challenge to the constitutionality of Idaho Code section 67-9230(8) before the district court and is now changing its position on appeal. In response, Carelon first contends that the different types of void-for-vagueness challenges are not so distinct as to constitute a different position on appeal, citing *Citizens United v. Federal Election Commission*, 558 U.S. 310, 331 (2010). Carelon also contends that it preserved the issue because it argued before

22

the district court the Director's interpretation and application of the statute to conclude Carelon was ineligible to bid on the ITN rendered the statute impermissibly vague. We agree with Carelon that it properly preserved the challenge

To preserve an issue for appeal, "both the issue *and a party's position on that issue must be presented to the trial court . . . .*" *State v. Wilson*, 169 Idaho 342, 347, 495 P.3d 1030, 1035 (2021) (emphasis in original). "A party may refine issues that they have raised below with additional legal arguments so long as the substantive issue and the party's position on that issue remain the same." *Siercke v. Siercke*, 167 Idaho 709, 715-16, 476 P.3d 376, 382-83 (2020). "A distinction exists between a refined issue, appropriate for review, and a new issue, unfit for consideration." *Id.* "This Court will decide refined legal arguments on an issue heard and decided by the court below, but in fairness to the district court and the opposing party, we cannot usurp the district court's role by deciding new legal issues in the first instance." *Id*. (citation omitted). "In other words, '[a] groomed horse is expected on appeal, but a different horse is forbidden.' " *Id*.

Here, Carelon's amended complaint raised the void-for-vagueness challenge in its first cause of action:

> 129. An actual controversy exists between Plaintiff and Defendants as to whether [Carelon] is ineligible to submit a bit for the ITN based upon its work under the 2019 Contract.

> 130. [Carelon] is therefore entitled to a declaration from the [c]ourt that [Carelon] is not barred from bidding on the ITN *under the proper interpretation of Idaho Code section 67-9230(8)*.

> 131. *Insofar as the interpretation of the State Defendants is not in error or contrary to law*, Idaho Code section 67-9230(8) fails to give adequate notice as to what conduct is prohibited if it does not require knowledge or intent to violate the statute.

> 132. [Carelon] is thus entitled to a declaration from the [c]ourt that Idaho Code section 67-9230(8) is unconstitutional and void for vagueness.

(Emphasis added). From this language, it is clear Carelon alleged from the outset of this case that it was the Director's *interpretation* of section 67-9230(8) that gave rise to the vagueness challenge. While the amended complaint does not explicitly state the statute is void for vagueness *as applied by the Director*, the meaning is the same: Carelon alleged the Director incorrectly applied the statute against Carelon, either because the Director incorrectly interpreted the statute, or because the statute broadly covers Carelon's conduct without providing proper notice. In other words, if

the Director correctly interpreted section 67-9230(8) to prohibit Carelon from bidding on the ITN based on Carelon's work in the 2019 Contract, Carelon alleged the statute failed to provide Carelon notice that it would be applied against Carelon in that manner. This is the substance of an as-applied challenge.

Moreover, Carelon argued before the district court that reading the statute in the same manner as the Director "so far as to prohibit [Carelon] from bidding on a State procurement *under these circumstances*" fails to provide notice of what is prohibited, and the Director's interpretation renders the statute "hopelessly ambiguous as to what connection to the subject matter of a procurement is sufficient to disqualify a bidder from bidding." (Emphasis added). By drawing the district court's attention to the Director's interpretation of the statute "under the circumstances" of *this* case, it is apparent that Carelon used the term "interpretation" in place of the more precise term "application." While Carelon now utilizes the precise phrasing that section 67-9230(8) "is void for vagueness as applied to Carelon under the [Director]'s interpretation," this is a refined argument on appeal as opposed to an entirely new position. Accordingly, Carelon has preserved its void for vagueness as applied challenge.

### 3. Carelon's void for vagueness challenge is not precluded by the State Procurement Act's limitation on judicial review.

Magellan argues this Court should not consider Carelon's void for vagueness challenge not because of a standing or preservation problem, but because an as-applied challenge would run afoul of the State Procurement Act's limitation on judicial review. In support of this argument, Magellan cites to *American Falls Reservoir District No. 2 v. Idaho Department of Water Resources*, 143 Idaho 862, 871, 154 P.3d 433, 442 (2007). However, *American Falls* does not stand for this proposition. *American Falls* discussed the importance of exhausting administrative remedies before proceeding with an as-applied challenge in order to provide the court with a complete record as to how the statute was applied against a party. *Id*. at 871-72, 154 P.3d 442-43. Here, neither Magellan nor the State contend Carelon has failed to exhaust administrative remedies, and there is no concern of an incomplete administrative record. Indeed, it is clear Carelon *did* utilize the administrative process to challenge the Purchasing Administrator's determinations and conclusions to the full extent allowed, and the record is also clear regarding how the Director reached its decisions and applied Idaho Code section 67-9230(8) against Carelon. A void for vagueness challenge is a constitutional challenge, rooted in notions of due process. *See Olsen v.*

24

*J.A. Freeman Co.,* 117 Idaho 706, 716, 791 P.2d 1285, 1295 (1990) ("[A] statute denies due process of law and raises a constitutional question only when it is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application."). Thus, an as-applied constitutional challenge remains available as an original action. Accordingly, Carelon's as applied challenge is not barred by the Procurement Act's prohibition on judicial review.

4. *Idaho Code section 67-9230(8) is not unconstitutionally vague.*

"The Due Process Clause of the federal Constitution embodies the principle of void-for-vagueness, which is that a statute which either forbids or requires the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Walsh v. Swapp Law, PLLC*, 166 Idaho 629, 641, 462 P.3d 607, 619 (2020) (quoting *Haw v. Idaho State Bd. of Med.*, 140 Idaho 152, 157, 90 P.3d 902, 907 (2004)). There is a strong presumption that legislative acts are constitutional, and the party asserting the statute is unconstitutional will bear the burden of overcoming this presumption and showing its invalidity. *Id*. "[A]ny doubt concerning the interpretation of a statute is to be resolved in favor of that which will render the statute constitutional." *Id*. (quoting *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 790, 791 P.2d 1285, 1288 (1990)).

While much of this Court's jurisprudence discussing the void for vagueness doctrine concerns criminal statutes, the doctrine applies equally to civil statutes. *Olsen*, 117 Idaho at 716, 791 P.2d at 1295. However, the Constitution has greater tolerance for some degree of vagueness in civil statutes as opposed to criminal statutes:

> The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.

> Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally

protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982) (footnotes omitted). A civil statue is unconstitutional when it either forbids or requires doing an act in terms so vague that it invites "incongruous results because it would leave the 'public uncertain as to the conduct it prohibits' and 'judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.' " *Walsh v*, 166 Idaho at 641, 462 P.3d at 619 (quoting *Olsen*, 117 Idaho at 709, 791 P.2d at 1288). A statute will be held unconstitutionally vague as applied to the challenger only when the statute fails to provide sufficient warning of its proscriptions or prohibitions in relation to the conduct at-issue in the case at-hand. *See id*. (rejecting an as-applied challenge to the statute of limitations contained in Idaho Code section 5-219(4) because the statute provides clear notice that the type of malpractice claims asserted by the challenger are barred within certain timeframes); *United States v. National Dairy Products Corp.*, 372 U.S. 29, 33 (1963).

Section 67-9230(8) of the Idaho Code is not void for vagueness as applied against Carelon. The statute prohibits a vendor party from submitting a bid for a state contract if the vendor "was paid for services used in preparing the specifications" of the contract or if "the services influenced the procurement process." I.C. § 67-9230(8). We agree with the district court that the statute is not vague.

The plain language of section 67-9230(8) was sufficient to put Carelon on notice of what actions would disqualify it from bidding:

> No vendor or related party, or subsidiary, or affiliate of a vendor, may submit a bid to obtain a contract to provide property to the state, if the vendor or related party, or affiliate or subsidiary was paid for services used in preparing the specifications or if the services influenced the procurement process.

I.C. § 67-9230(8).

Carelon would know if: (1) it had previously contracted with the State to provide services, (2) whether it was paid by the State for those services; and (3) whether those services: (a) were used to create a specification in the new procurement, or (b) influenced the new procurement process. In this case, there is no dispute that Carelon's 2019 Report to IDHW "offered high-level recommendations as to the types of crisis services the State might offer" in a behavioral-health crisis system or that IDHW paid Carelon to prepare the report. And there is no dispute that the ITN

26

contained specifications regarding behavioral-health crises services that mirrored a number of the recommendations contained in the 2019 Report.

Carelon contends the ITN specifications that the determinations officer concluded were identical to the 2019 Report's crisis standards were not created by Carelon but rather by the Substance Abuse and Mental Health Services Administration ("SAMHSA"). Therefore, Carelon contends it was SAMHSA, and not itself, that influenced the ITN. This argument is unavailing.

Under Idaho Code section 67-9230(8), it does not matter *where* the standards in Carelon's 2019 report originally came from. Instead, what plainly matters is *who* provided those specifications to the State and whether that person or entity was paid by the State to provide them. Here, *Carelon*—not SAMHSA—was the entity that provided those standards to IDHW and specifically recommended it adopt them as best-practices in a future behavioral health system. And *Carelon*—not SAMHSA—was paid by the State to prepare this report. With this understanding, the Director determined that the 2019 Report *was* used to create the specifications in the ITN, and under a plain reading of section 67-9230(8), this made Carelon ineligible to bid. Accordingly, we hold Idaho Code section 67-9230(8) is not vague as applied against Carelon.

In sum, we affirm the district court's conclusion that Idaho Code section 67-9230(8) is not void for vagueness.

### E.     No party is awarded attorney fees.

Magellan requests attorney fees on appeal pursuant to Idaho Code section 12-121, which authorizes attorney fees to the prevailing party "if the Court believes that the proceeding was brought, pursued, or defended frivolously, unreasonably or without foundation." *Kelly v. Kelly*, 171 Idaho 27, 49, 518 P.3d 326, 348 (2022). Magellan is a prevailing party on appeal, however, Carelon's appeal was not frivolous or without foundation. Although ultimately unsuccessful, Carelon's arguments regarding declaratory judgment actions as opposed to judicial review of the Director's actions were not frivolous because this Court had not yet addressed the availability of declaratory judgment actions in the context of the Procurement Act, and Carelon adequately supported its position with argument and authority. Likewise, Carelon's constitutional arguments, while unsuccessful, were not frivolous. Accordingly, we decline to award any attorney fees to Magellan. However, as the prevailing parties, both the State and Magellan are entitled to an award of costs as a matter of course pursuant to Idaho Appellate Rule 40(a).

## IV.   CONCLUSION

For the foregoing reasons, we affirm the district court's decision to dismiss Carelon's declaratory judgment action and Carelon's petition for a writ of mandate. The Respondents are awarded costs, but not attorney fees, on appeal.

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.